RAYMOND J. BERMINGHAM AND FELICIA A. BERMINGHAM, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Bermingham v. Commissioner
Docket No. 24897-90
United States Tax Court
T.C. Memo 1994-69; 1994 Tax Ct. Memo LEXIS 73; 67 T.C.M. (CCH) 2200; February 23, 1994, Filed *73 Decision will be entered under Rule 155. Petitioners' 1987 dividend and capital gain distributions from a mutual fund were reinvested in the fund. At the end of 1987 petitioners' holdings in the fund were worth less than their original investment. Petitioners deducted lodging expenses for petitioner husband (H); expenses for H's tools and professional dues; clothes and grooming expenses for petitioner wife (W); and H's contribution to an individual retirement account. During 1987 W was an active participant in her employer's tax-qualified employees plan. 1. Held: Petitioners' dividend and capital gain distributions were income in the year distributed. Sec. 61, I.R.C. 1986. 2. Held, further, H's employment in 1987 was not temporary. Petitioners may not deduct expenses for H's lodging. Sec. 162(a)(2), I.R.C. 1986. 3. Held, further, petitioners may not deduct expenses for H's tools and professional dues. Sec. 162(a), I.R.C. 1986. 4. Held, further, petitioners may not deduct W's clothes and grooming expenses. Sec. 262, I.R.C. 1986. 5. Held, further, petitioners may not deduct H's contribution to an individual retirement account. *74 Sec. 219(g), I.R.C. 1986. 6. Held, further, petitioners are liable for additions to tax under subpars. (A) and (B) of sec. 6653(a)(1), I.R.C. 1986. Burden of proof allocated and amount determined as to subpar. (B). 7. Held, further, petitioners are liable for an addition to tax under sec. 6661(a), I.R.C. 1986. Raymond J. Bermingham, pro se. [1]
*75 For respondent: Monica E. Koch. CHABOT
CHABOT
MEMORANDUM FINDINGS OF FACT AND OPINION CHABOT, Judge: Respondent determined a deficiency in Federal individual income tax against petitioners for 1987 in the amount of $ 11,421.22, [2] and additions to tax under section 6653(a)(1)(A) (negligence, etc.) in the amount of $ 244.55, section 6653(a)(1)(B) (negligence, etc.) in the amount of 50 percent of the interest on $ 4,891.02, and section 6661(a) (substantial understatement of tax) in the amount of $ 2,855.31. In the answer, respondent describes the section 6653(a)(1)(B) determination as "50% of the interest due on $ 11,421.22." We treat this as a claim under section 6214(a) for an increased amount of section 6653(a)(1)(B) *76 addition. This matter is discussed further infra in Part II.A. Petitioners claim an overpayment of $ 667.58. After concessions by both sides, [3] the issues for decision are as follows: (1) Whether petitioners had income from dividend and capital gain distributions in 1987 from Putnam International Equities (hereinafter sometimes referred to as Putnam), a mutual fund; (2) whether petitioners may deduct Raymond's lodging expenses as a business expense; (3) whether petitioners may deduct amounts for tools and professional dues as a business expense of Raymond; (4) whether petitioners may deduct amounts for clothes and grooming as a business expense of Felicia; (5) whether petitioners may deduct Raymond's contribution to an individual retirement account (hereinafter sometimes referred to as an IRA); (6) whether petitioners are liable for additions to tax under subparagraphs (A) and (B) of section 6653(a)(1) (relating to negligence, etc), and, if so, then what the amount is of the underpayment to which the subparagraph (B) addition applies; (7) whether petitioners are liable for an addition to tax under section 6661 (relating to substantial understatement of tax).
*77 FINDINGS OF FACT Some of the facts have been stipulated; the stipulations and the stipulated exhibits are incorporated herein by this reference. When the petition was filed in the instant case, in November 1990, Felicia resided in New York, New York, and Raymond resided in Melville, New York. Petitioners filed a joint Federal income tax return for 1987. During 1987 Felicia was employed by Parfums Stern, Inc. (hereinafter sometimes referred to as Stern), to sell perfume at the Stern perfume counter at the B. Altman & Co. department store in Manhattan, New York City. Stern's Employee Information Manual applicable to 1987 states as follows: Personal
A neat and clean appearance is important
Appearance
when working with others. You represent
Parfums Stern Inc. so your personal taste and
style of clothing should be appropriate for
your position. Personal appearance was an area of periodic review for Felicia, but she was not required to wear a uniform or special dress while at work. Stern has never maintained a dress code. During 1987 Felicia was an active participant in Stern's tax-qualified employees pension plan. Felicia is 22 years younger than Raymond. By the *78 time of the trial petitioners were divorced and Stern's tax-qualified employees pension plan had been terminated. Raymond contributed $ 2,000 to his IRA for 1987. During 1987 Felicia lived in Manhattan, while Raymond lived in Melville, at the western end of Suffolk County, on Long Island. Raymond had lived at the same address in Melville (hereinafter sometimes referred to as the Melville residence) since September 1981. From March 1976 to August 1981, he had lived in Dix Hills, which is about 5 miles northeast of Melville. Raymond worked at Grumman Aerospace Corp. (hereinafter sometimes referred to as Grumman) from September 1978 through February 1987 in Grumman's stress analysis department. Grumman was located in Bethpage, at the eastern end of Nassau County, about 5 miles southwest of Melville. Before that, he had worked for Fairchild Republic, in Farmingdale, about 4 miles south of Melville and about 5 miles east of Grumman, from July 1977 to August 1978. Before that, he had worked for Grumman from February 1976 to June 1977. Raymond's pre-1976 employment history is as shown in table 1. Table 1
Time Period
Location
[1]Employer 2/75 - 11/75
New Orleans, La.
Martin Marietta
3/74 - 1/75
Bethpage, N.Y.
Grumman
3/73 - 2/74
Farmingdale, N.Y.
Fairchild Republic
9/71 - 2/73
Miscellaneous
3/71 - 9/71
Farmingdale, N.Y.
Fairchild Republic
5/70 - 2/71
Unemployed 3/69 - 5/70
Bethpage, N.Y.
Grumman
9/68 - 2/69
Burbank, Calif.
Lockheed
9/67 - 8/68
Nashville, Tenn.
Avco
1/67 - 8/67
Newport Beach,
Philco-Ford
Calif.  12/65 - 12/66
Downey, Calif.
North American Aviation
6/59 - 11/65
Columbus, Ohio
North American Aviation
Before 1959
Various positions in Denver, Colo.,  Teterboro, N.J., and Farmingdale, N.Y.  *79 Raymond was laid off from Grumman's stress analysis department in February 1987. On April 27, 1987, Raymond was rehired by Grumman to work in the material review division. Before he was rehired, Raymond submitted a resume and a security questionnaire to the material review division. Raymond worked in the material review division until he was laid off on January 13, 1989. Raymond was registered to vote in Melville. Raymond's automobile was registered to his Melville address. Raymond did not pay any New York City income taxes for 1987. Raymond has degenerative arthritis of the spine, and prolonged driving may injure his health. In 1987 Raymond did not incur any medical expenses for his degenerative arthritis condition. Since 1979 petitioners had taken deductions on their Federal income tax returns for expenses relating to Raymond's separate home in the vicinity of his Grumman employment. Petitioners' deduction for 1979 was challenged by respondent, but respondent then conceded the issue for 1979. Respondent did not question the corresponding deductions for 1980 through 1986. On their 1987 tax return, petitioners claimed itemized miscellaneous deductions as follows: Felicia's clothes and grooming expenses:
$ 5,000 Tools and professional dues:
1,000
Cost of maintaining second home due
to chronic back condition (doctor's affidavit enclosed) 300 x 52 = 15,600
Total
21,600
*80 This total was then reduced by 2 percent of adjusted gross income (calculated as $ 2,182 on petitioners' tax return) and the remainder ($ 19,418) added to petitioners' other itemized deductions. On December 18, 1986, Raymond and Felicia invested $ 50,000 in Putnam. Their investment, at a cost of $ 31.43 per share, gave them 1,590.837 shares. On March 10, 1987, distributions by Putnam were reinvested at a cost of $ 29.09 per share, giving petitioners an additional 237.341 shares, for a total Putnam holding of 1,828.178 shares. On December 10, 1987, distributions by Putnam were reinvested at a cost of $ 22.61 per share, giving petitioners an additional 294.481 shares, for a total Putnam holding of 2,122.659 shares. These distributions [4] were automatically reinvested in Putnam in 1987. Petitioners did not report the distributions from Putnam on their tax return. In 1989 petitioners sold all 2,173.071 shares (additional reinvestments of distributions were made in 1988) of their Putnam stock for $ 57,542.92, or $ 26.48 per share. *81 On petitioners' 1987 tax return, they list 30 securities sales involving three brokerage firms. The securities in these transactions cost petitioners an aggregate of $ 60,865.35 and produced aggregate receipts of $ 65,442.96. On their tax return, petitioners took a $ 2,000 IRA contribution deduction, and they reported adjusted gross income of $ 109,103.82, taxable income of $ 72,068.06, a tax liability of $ 18,313.82, and withholding of $ 18,773.19. They claimed a refund of $ 459.37. On May 9, 1988, respondent sent to petitioners a correction notice, see infra note 11, which stated that respondent had made three corrections to petitioners' 1987 tax return, as follows: (1) The deduction for a contribution to Raymond's IRA was disallowed, discussed infra, at Part I.E., (2) the deduction for personal exemptions was reduced, [5] and (3) a lower tax rate was applied to certain capital gains. These changes resulted in petitioners having a tax liability for 1987 of $ 19,337.35, and an amount due (after application of petitioners' withholding amounts) of $ 564.16. Respondent withheld $ 564.16 (plus interest) from petitioners' income tax refund for 1988. *82 By 1987 Raymond's employment in the general vicinity of the Melville residence was indeterminate; it may have been indeterminate in its inception. Petitioners are not unsophisticated investors. Petitioners were negligent in not reporting the dividend and capital gain distributions from Putnam and interest income of $ 32, in deducting expenses for Raymond's business tools and professional dues, and in deducting expenses for Felicia's clothes and grooming. Petitioners were not negligent in deducting expenses for the Melville residence. OPINION I. Deficiency A. Distributions From Putnam
Raymond contends that petitioners did not have dividend income or capital gain from Putnam in 1987. Raymond contends that: (1) The purported gain was a "paper gain" only, and (2) petitioners did not have gain from the Putnam investment in 1987 because the Putnam stock declined in value (from about $ 50,000 to $ 48,000) in 1987. Respondent contends that the dividend and capital gain distributions were income to petitioners in 1987 even though these amounts were reinvested into Putnam. Respondent contends that whether the value of the stock declined in 1987 is irrelevant to the instant *83 case. We agree with respondent. Section 61(a) provides, in pertinent part, as follows: SEC. 61. GROSS INCOME DEFINED. (a) General Definition. -- Except as otherwise provided in this subtitle, gross income means all income from whatever source derived, including (but not limited to) the following items: * * * (3) Gains derived from dealings in property; * * * (7) Dividends;
Under sections 301(a), 301(c)(1), and 316, distributions of dividends "to a shareholder with respect to its stock", sec. 301(a), are to be included in gross income. Putnam distributed more than $ 13,000, see supra note 4, to Raymond in 1987. Under the foregoing provisions of the tax laws, these distributions are taxable to petitioners, unless petitioners direct us to some law to the contrary. They have failed to do so. We conclude that the distributions are taxable to petitioners. Putnam, a mutual fund in popular parlance, evidently qualified as a regulated investment company. Sec. 851. As such, it was required to pay out almost all of its income. Sec. 852(a). As a regulated investment company, Putnam could, in effect, pass through to its shareholders the long-term capital gain characteristics *84 of Putnam's income, even though the shareholders had held their stock in Putnam less than 12 months. Sec. 852(b)(3). In the instant case, about half of the 1987 distributions were made within 6 months after petitioners bought their Putnam stock. Nevertheless, more than 90 percent of the distributions were designated by Putnam as capital gain, sec. 852(b)(3)(C), and so all of the amounts so designated are taxable to petitioners as long-term capital gains. Sec. 852(b)(3)(B). We conclude that petitioners are taxable on their 1987 Putnam distributions. The facts that these distributions were promptly reinvested in Putnam, and that Putnam shares dropped in value in 1987, no more excuse petitioners from taxation than would be the case if they had taken the distributions and squandered them, or invested them in some other asset that dropped in value. Raymond contends as follows: As long as distributions are in the form of shares, they remain on paper only. They are of no use to the shareholder until the shares are sold. Then, and only then can a true, accurate accounting be made. Besides, there is no danger of the government being defrauded if they wait until the shares *85 are sold. The purchase price and the sale price are then known, and there is no question as to whether a gain or a loss was sustained. At any given time interval between purchase and sale, the value of the shares is purely momentary, since it fluctuates with the market. To pick such an interval as a basis for taxation is totally arbitrary, and therefore violates due process. Counsel for the IRS correctly asserted that since petitioner sold his shares in 1989, this is the year in which he should be allowed to claim any losses. Petitioner simply contends that by the same argument, 1989 is also the year for which the IRS should be allowed to levy any taxes.
Firstly, as to Raymond's contention that the distributions were in the form of shares, nothing in the record in the instant case indicates that Putnam distributed stock, rather than funds which were immediately reinvested in stock. Secondly, even if the distributions were in the form of shares, this matter would be governed by section 305, which provides, in pertinent part, as follows: SEC. 305. DISTRIBUTIONS OF STOCK AND STOCK RIGHTS. (a) General Rule. -- Except as otherwise provided in this section, gross income does *86 not include the amount of any distribution of the stock of a corporation made by such corporation to its shareholders with respect to its stock. (b) Exceptions. -- Subsection (a) shall not apply to a distribution by a corporation of its stock, and the distribution shall be treated as a distribution of property to which section 301 applies -- (1) Distributions in lieu of money. -- If the distribution is, at the election of any of the shareholders (whether exercised before or after the declaration thereof), payable either -- (A) in its stock, or (B) in property.
Nothing in the record in the instant case indicates that Putnam's shareholders did not have an election to receive funds if they wished. Under these circumstances, the nonrecognition provision of section 305(a) does not apply, and petitioners are required to include the 1987 Putnam distributions in their income subject to tax. For a few years in the early 1980's, section 305(e) provided that shareholders could elect to exclude from income reinvested dividends of qualified public utilities. However, that provision has been repealed, and nothing in the record suggests that Putnam could have been a qualified public *87 utility. As to the asserted loss in value during 1987, we observe that the general rule, sec. 1001, is that gain or loss is not subjected to tax until there has been a "recognition event", such as a sale or exchange. See generally Cottage Savings Assn. v. Commissioner, 499 U.S. 554 (1991). The distributions are recognition events, but the changes in value are not. Section 1256 provides that certain types of contracts and options are to be "marked to market" at the end of the year and treated as though they had been sold, but this exception to the general recognition rule does not apply to the changes in value of petitioners' Putnam stock. We hold for respondent on this issue. B. Melville Residence
Raymond contends that the expenses for maintaining the Melville residence are deductible as a business expense because Raymond's employment at Grumman was temporary and the Melville residence was "away from home". Respondent contends that the cost of the Melville residence is a personal expense, and is nondeductible. We agree with respondent that Raymond's employment was not temporary, that Raymond was not away from home when he was at the Melville *88 residence, and that Raymond's expenses relating to the Melville residence are not deductible. Personal expenses are not deductible, unless the contrary is "expressly provided" in chapter 1 of the Internal Revenue Code of 1986. Sec. 262; [6] *89 Mitchell v. Commissioner, 74 T.C. 578, 580 (1980). Section 162(a)(2)[7] expressly permits a taxpayer to deduct what might otherwise be personal expenses if all the following requirements are met: (1) The expense is a traveling expense (this includes such items as transportation fares and food and lodging expenses incurred while traveling); (2) The expense is incurred while "away from home"; and (3) The expense is an ordinary and necessary expense incurred in pursuit of a trade or business.
Mitchell v. Commissioner, 74 T.C. at 581 (citing Commissioner v. Flowers, 326 U.S. 465, 470 (1946)). *90 This Court has held that as a general rule "home", as used in section 162(a)(2), means the vicinity of the taxpayer's principal place of employment and not where his or her personal residence is located. E.g., Mitchell v. Commissioner, 74 T.C. at 581; Daly v. Commissioner, 72 T.C. 190, 195 (1979), affd. 662 F.2d 253 (4th Cir. 1981); Foote v. Commissioner, 67 T.C. 1, 4 (1976); Garlock v. Commissioner, 34 T.C. 611, 614 (1960). Raymond's principal place of employment during the year in issue was at Grumman. Under the general rule, the vicinity of Grumman was his "tax home". The Melville residence was about 5 miles from Grumman. We conclude that Raymond was not away from home when he was at the Melville residence. Raymond relies on an exception to the general rule. Under this exception, a taxpayer's personal residence may be the "tax home" if the principal place of business is "temporary", rather than "indefinite". See Peurifoy v. Commissioner, 358 U.S. 59, 60 (1958). Raymond contends that his personal *91 residence was in Manhattan, which he contends was 35 miles from Grumman, and that his employment at Grumman was temporary. A place of business is a "temporary" place of business under the principles of Peurifoy if the employment is such that "termination within a short period could be foreseen". Albert v. Commissioner, 13 T.C. 129, 131 (1949); see Michaels v. Commissioner, 53 T.C. 269, 273 (1969). Or, viewed from the other side of the coin, an employment is for an "indefinite", "substantial", or "indeterminate" period of time if "its termination cannot be foreseen within a fixed or reasonably short period of time." Stricker v. Commissioner, 54 T.C. 355, 361 (1970), affd. 438 F.2d 1216 (6th Cir. 1971). "Further, if the employment while away from home, even if temporary in its inception, becomes substantial, indefinite, or indeterminate in duration, the situs of such employment for purposes of the statute becomes the taxpayer's home." Kroll v. Commissioner, 49 T.C. 557, 562 (1968). These are questions of fact, Peurifoy v. Commissioner, 358 U.S. at 60-61, *92 as to which petitioners have the burden of proof, Daly v. Commissioner, 72 T.C. at 197. Notwithstanding Raymond's contention that his home (within the meaning of sec. 162(a)(2)) was in Manhattan, [8] we note that (1) Raymond lived in Melville or Dix Hills from early 1976 at least until November 1990; (2) Raymond worked in the general vicinity of Melville and Dix Hills from early 1976 at least until early 1989; (3) Raymond was registered to vote in Melville, his automobile was registered to his Melville address, and he did not pay any New York City income taxes for 1987; (4) the record does not include evidence that he lived in Manhattan or returned to Manhattan on weekends or holidays; and (5) the record includes evidence that Raymond's medical condition would have inhibited any such traveling between Manhattan and his place of work. *93 Thus, applying the lesson of Kroll, whatever may have been the situation when Raymond went to that area of Long Island in early 1976, by 1987 that area of Long Island had become his home in both the tax sense and in the sense of its being the place where he lived. Raymond does not suggest that his unemployment from February to April 1987 caused what was indefinite employment to be transformed into temporary employment under the Peurifoy rule, and we have not found any case to so hold. Raymond continued to live in Melville during the 2 months of unemployment, and was still living in Melville when the petition was filed in the instant case, in November 1990. We conclude that the Peurifoy "temporary" exception to the general "tax home" rule does not apply and that petitioners' 1987 expenses for Raymond's residence in Melville are not deductible as ordinary and necessary business expenses. The Court of Appeals for the Second Circuit approaches the question of "tax home" somewhat differently, see Rosenspan v. United States, 438 F.2d 905 (2d Cir. 1971); Six v. United States, 450 F.2d 66 (2d Cir. 1971), but we *94 conclude that it would reach the same result in the instant case. In Six v. United States, supra, the taxpayer was the entertainer Ethel Merman. Merman and her husband lived in Colorado, and owned a home in Colorado. Merman moved to New York because she signed a contract, not to exceed 2 years, to appear in a Broadway musical. In considering the issue of Merman's tax home, the Court of Appeals for the Second Circuit stated the following standard, 450 F.2d at 69: The key inquiry which must be made then is whether, under all the circumstances, Miss Merman's residence in New York during 1959 may be viewed as temporary in nature or as sufficiently indefinite to expect that a reasonable person in her position would pull up stakes and make her permanent residence in New York. * * *
In Six v. United States, supra, the Court of Appeals for the Second Circuit remanded the case for consideration of Merman's tax home under the above standard. Applying that standard in the instant case, we conclude that Raymond's employment with Grumman, having begun more than 8 years before the year *95 in issue, was not temporary in nature and that a reasonable person would have long ago made the Melville area the permanent residence. See also Stemkowski v. Commissioner, 690 F.2d 40, 48-49 (2d Cir. 1982), affg. on this issue and revg. and remanding on another issue 76 T.C. 252, 303-306 (1981) (holding that taxpayers' living expenses in New York City were not deductible, because taxpayers' employment in New York City was not temporary and it was taxpayers' personal choice to live in Canada and travel to New York City). We conclude that Raymond was not "away from home" for purposes of section 162(a)(2) when he lived in Melville, and that petitioners are not entitled to a deduction for expenses of the Melville residence. In an attempt to justify the deduction for the Melville residence, Raymond analogizes to "per diem" payments. Petitioners' 1987 Federal income tax return indicates that petitioners computed the deduction of $ 15,600 by multiplying $ 300 times 52 weeks. This amounts to a deduction of just under $ 43 per day. Raymond contends that in 1987, $ 44 was a "per diem" amount which an employee could receive from *96 an employer while the employee is away from home, without having to "account for" the per diem amount. Raymond states that he deducted less than the per diem amount. Firstly, Raymond does not contend that he received per diem payments from Grumman in 1987, and on brief he indicates that he has not received per diem payments since 1982, so any arguments about per diem payments are not applicable in the instant case. Secondly, the per diem deductions dealt with in section 62(a)(2)(A) and the second sentence of 274(d), as well as the regulations thereunder, are allowable only if they are allowable under section 162(a)(2). Under section 162(a)(2) Raymond would have to be "away from home", and we have already concluded that Raymond was not away from home. Raymond also contends that the expenses of the Melville residence are deductible since Raymond had to live close to Grumman because of his back condition. [9] However, section 162(a)(2) does not allow a deduction for lodging expenses because of a health condition even though the health condition may make it necessary for the taxpayer to live close to work. Unless the taxpayer is "away from home" because the employment location is *97 temporary, lodging expenses are a personal expense, and a health condition does not make them a deductible business expense. We hold for respondent on this issue. C. Tools and Professional Dues
Raymond contends that petitioner's $ 1,000 "tools and professional dues" deduction is allowable as a business expense. Respondent contends that the expenses are not deductible because *98 they are unsubstantiated. We agree with respondent. Section 162(a), supra note 7, allows a deduction for "all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business," including a trade or business as an employee. A trade or business expense deduction is not allowable to an employee to the extent that the employee is entitled to reimbursement from his or her employer for an expenditure related to his or her status as an employee. Heidt v. Commissioner, 274 F.2d 25 (7th Cir. 1959), affg. T.C. Memo. 1959-31; Lucas v. Commissioner, 79 T.C. 1, 6-7 (1982); Stolk v. Commissioner, 40 T.C. 345, 356 (1963), affd. 326 F.2d 760 (2d Cir. 1964); Podems v. Commissioner, 24 T.C. 21, 22-23 (1955). On brief, Raymond states that he was required to supply his own tools for his employment in the field of stress engineer, and that these tools included reference books and "calculators, straight edges, triangles, french curves, ship's curves, compasses, dividers, *99 scales, templets," etc. Raymond states that these items are in constant need of replacement because they get broken, lost, or stolen. Raymond did not present any evidence at trial about these expenses, and the parties have stipulated that Raymond does not have "invoices, cancelled checks, receipts, or other documentary substantiation relating to" these expenses. Petitioners have the burden of proving these deductions. Rule 142(a); [10]Welch v. Helvering, 290 U.S. 111, 115 (1933). In Cohan v. Commissioner, 39 F.2d 540 (2d Cir. 1930), the taxpayer claimed to have spent at the rate of $ 22,000 per year on travel and entertainment expenses during the period before the Board of Tax Appeals. We concluded that he had spent much for these purposes and that expenditures of that sort were deductible. Nevertheless, we did not allow any deduction, because *100 the taxpayer could not give specific information as to any particular expenditure. The Circuit Court of Appeals for the Second Circuit directed that, 39 F.2d at 544 -- the Board should make as close an approximation as it can, bearing heavily if it chooses upon the taxpayer whose inexactitude is of his own making. But to allow nothing at all appears to us inconsistent with saying that something was spent. True, we do not know how many trips Cohan made, nor how large his entertainments were; yet there was obviously some basis for computation, if necessary by drawing upon the Board's personal estimates of the minimum of such expenses. The amount may be trivial and unsatisfactory, but there was basis for some allowance, and it was wrong to refuse any, even though it were the traveling expenses of a single trip. It is not fatal that the result will inevitably be speculative; many important decisions must be such. We think that the Board was in error as to this and must reconsider the evidence.
We are mindful of these instructions; nevertheless we conclude that nothing is allowable. Firstly, no evidence in the record persuades us that Raymond *101 spent any amount for these purposes during 1987, the only year before the Court. Secondly, even if Raymond spent such amounts in 1987, no evidence in the record persuades us that Raymond's employer would not have reimbursed him for those particular amounts. Finally, we note that, in light of our conclusions disallowing petitioners' claimed deductions for the Melville residence, supra, and Felicia's clothes and grooming expenses, infra, the 2-percent floor on miscellaneous itemized deductions, sec. 67, would result in disallowing the entire $ 1,000 deduction that petitioners claim for Raymond's tools and dues. We hold for respondent on this issue. D. Clothes and Grooming
Raymond contends that petitioners' $ 5,000 deduction for Felicia's clothes and grooming expenses is allowable under section 162 as ordinary and necessary business expenses of Felicia's employment at Stern's. Respondent contends that the clothes and grooming expenses are nondeductible under section 262 because the expenses are personal expenses. We agree with respondent. The cost of a wardrobe for employment has generally been considered a nondeductible personal expense within the meaning of *102 section 262, supra note 6. See, e.g., Donnelly v. Commissioner, 262 F.2d 411, 412 (2d Cir. 1959), affg. 28 T.C. 1278 (1957); Barone v. Commissioner, 85 T.C. 462, 469 (1985), affd. without published opinion 807 F.2d 177 (9th Cir. 1986); Hynes v. Commissioner, 74 T.C. 1266, 1290 (1980). Three criteria have been established for the cost of clothes to be deductible as an ordinary and necessary business expense: (1) The clothes are required or essential in the taxpayer's employment, (2) the clothes are not suitable for general or personal wear, and (3) the clothes are not so worn. Donnelly v. Commissioner, 262 F.2d at 412; Hynes v. Commissioner, 74 T.C. at 1290. In the instant case, Stern's did not require Felicia to wear certain clothes. The requirement was only that Felicia's appearance be "neat and clean". Raymond does not contend that Felicia's clothes were not suitable for general wear. We conclude that Felicia's clothes expenses are nondeductible personal expenses. *103 Felicia's expenses for grooming are also nondeductible. See Stemkowski v. Commissioner, 690 F.2d at 48; Drake v. Commissioner, 52 T.C. 842 (1969). We also note that Raymond did not present any evidence to substantiate the expenditures sought to be deducted. Here, too, the Cohan rule does not require us to allow any deduction. We conclude that Felicia's clothes and grooming expenses were nondeductible personal expenses. On brief, Raymond points out that deductions are allowable for business use of automobiles and homes even though some private use is made of these automobiles and homes. He asks what is the "compelling argument for discriminating against clothes, as opposed to cars or private homes". The short answer is that we do not write on a clean slate. As the law has developed, petitioners are not entitled to deduct Felicia's clothes and grooming expenses, on the record in the instant case. We hold for respondent on this issue. E. IRA Contribution
On their 1987 Federal income tax return petitioners deducted a $ 2,000 contribution to Raymond's IRA. By way of a correction notice, respondent disallowed *104 this deduction as a mathematical or clerical error, see sec. 6213(b). Although we did not have jurisdiction to consider this matter in an earlier docket, [11] the allowability of this deduction affects the amount of petitioners' 1987 income tax deficiency, and we do have jurisdiction to consider it in the instant deficiency determination case. *105 Raymond contends that petitioners' deduction for Raymond's IRA contribution is allowable, and that respondent's withholding of a 1988 overpayment resulted in petitioners' overpaying their 1987 taxes in the amount of $ 667.58. [12] Respondent contends that the deduction for the IRA contribution is not allowable because Felicia was an active participant in Stern's tax-qualified retirement plan, and petitioners' adjusted gross income for 1987 was more than $ 50,000. We agree with respondent. Section 219[13] provides for a deduction for an amount equal to the qualified retirement contributions of an individual for the taxable year. However, the deduction for any year is not to exceed *106 the lesser of $ 2,000 or an amount equal to the compensation includable in the taxpayer's gross income for that year. Sec. 219(b)(1). *107 The maximum allowable deduction is further limited where the taxpayer or the taxpayer's spouse was, for any part of the year, an active participant in a retirement plan described in section 401(a), and certain other retirement plans. Sec. 219(g)(1), (5). If either the taxpayer or the taxpayer's spouse was an active participant in a tax-qualified plan, then the $ 2,000 maximum allowable deduction is reduced according to the amount of the taxpayer's adjusted gross income for such taxable year. If a taxpayer files a joint tax return, then the maximum allowable deduction is reduced by a formula which phases the deduction out completely where the total adjusted gross income is $ 50,000 or more. Sec. 219(g)(2), (3). Raymond and respondent have stipulated that Felicia "was a covered employee for the taxable year 1987 under [Stern's] qualified pension plan". Although the stipulation does not use the term "active participant", Raymond does not contend that Felicia was not an active participant in Stern's tax-qualified plan. We conclude, and we have found, that Felicia was an active participant in Stern's tax-qualified plan, and the limitation on the deduction under section 219(g) applies. *108 Petitioners' adjusted gross income on their joint income tax return was more than $ 100,000. We conclude that petitioners are not entitled to any deduction for a contribution to Raymond's IRA. Raymond contends that petitioners should be able to deduct Raymond's contribution because Felicia is 22 years younger than he is, and he will not live long enough to enjoy any benefit from Felicia's tax-qualified plan. Raymond notes that he and Felicia are now divorced. Raymond contends that the intent of the limitation on this deduction is to prevent a person from enjoying the benefits of more than one retirement plan. Raymond contends that because he will not enjoy the benefits of Felicia's tax-qualified plan, the limitation should not apply. Raymond's contention overlooks the plain language of the statute applying the section 219(g) reduction "If * * * an individual or the individual's spouse is an active participant". Sec. 219(g)(1) (emphasis added). His contention puts us in mind of the following comments by the Court of Appeals in Johnson v. Commissioner, 661 F.2d 53, 55 (5th Cir. 1981), affg. 74 T.C. 1057 (1980): *109 Johnson makes a persuasive argument in equity, maintaining that since he did not attempt to deduct the $ 1,500 contribution to the IRA in 1975, and indeed reported as income the interest earned by the fund in 1976, the $ 1,500 should not be considered an "excess contribution." Albeit logical, the argument founders on the shoals of the words of the statute. * * *
We conclude that Raymond's contentions as to the intent of section 219(g) are without legal merit. Raymond also contends that the limitation on the IRA deduction is "unduly harsh punishment" in violation of the Eighth Amendment to the Constitution. We conclude that the Eighth Amendment is not implicated in the instant case. Firstly, disallowance of petitioners' claimed IRA contribution deduction is in no sense a punishment. Petitioners merely are compelled to pay taxes on their income without a deduction for certain savings. (The savings continue to be tax favored. Under section 408, the IRA is tax exempt, and Raymond does not have to take the IRA earnings into income until he receives distributions from the IRA.) The disallowance of the deduction is unrelated to any action that the Government has declared to *110 be illegal or otherwise improper. The instant case has not even the color of substance that is in the usual (but thus far unsuccessful) Eighth Amendment claim cases where deficiencies and additions to tax have been imposed after forfeitures or criminal tax penalties. E.g., McNichols v. Commissioner,     F.3d     (1st Cir. Dec. 29, 1993), affg. T.C. Memo. 1992-120; Ianniello v. Commissioner, 98 T.C. 165, 185-187 (1992). Secondly, deductions are a matter of legislative grace, and a taxpayer seeking a deduction must meet every condition the Congress has imposed. New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934). A taxpayer seeking a deduction has the burden to point to an applicable statute and show that the taxpayer is within its terms. Id. The foregoing rules apply to IRA deductions. See, e.g., Sims v. Commissioner, 72 T.C. 996, 1005-1009 (1979). In the instant case petitioners, together with many millions of others, have found themselves on the "wrong" side of the line that the Congress has chosen to draw. The Congress has moved *111 the line on several occasions, while grappling with questions of fairness and budgetary constraints. See a discussion of earlier Congressional considerations in Guest v. Commissioner, 72 T.C. 768, 772-778 (1979). In essence, Raymond is unhappy with the Congress' choice. [14] He has not shown the slightest foundation for his constitutional attack on the Congress' choice. We hold for respondent on this issue. II. Additions to Tax A. Negligence, Etc. -- Sec. 6653(a)
Raymond contends that the additions to tax for negligence are unfounded. Respondent contends that petitioners were *112 negligent as to each adjustment in the notice of deficiency. Respondent does not contend that petitioners were negligent as to the IRA deduction. We agree with petitioners that they were not negligent as to the Melville residence deduction; we agree with respondent as to the other disputed items. Section 6653(a)(1)(A)[15] imposes an addition to tax of 5 percent of the deficiency if any part of the underpayment of tax is due to negligence or disregard of rules or regulations. Section 6653(a)(1)(B) imposes an addition to tax equal to 50 percent of the interest payable under section 6601 with respect to the portion of such underpayment which is attributable to negligence. Thus, we must determine whether any portion of the underpayment is attributable to negligence, and if so, what portion. *113 (1) Preliminary Matters
Before we proceed to determine whether petitioners were negligent in their treatment of the various items, we consider what was determined in the notice of deficiency. The additions to tax under section 6653(a) are described as follows in the cover letter of the notice of deficiency: SEC. 6653(A)(1)(A)IRC
$ 244.50
SEC. 6653(A)(1)(B)IRC
SEE NOTE
NOTE: 50% OF THE INTEREST PAYABLE UNDER IRC 6601 WITH RESPECT TO THE PORTION OF THE UNDERPAYMENT TO IRC 6653(A)(1)(B)
The only explanation in the notice of deficiency appears in the Form 886-A, as follows: Since all or part of the underpayment of tax is due to the fact that you did not report all of the interest, dividends, or other income you received, and did not present any clear and convincing evidence explaining the omission, a negligence penalty was charged. The penalty is 5 per cent of the part of the underpayment attributable to the unreported interest, dividends, or other income plus 50 per cent of the interest due on the part of the underpayment that is due to negligence. We figured the penalty as of the date of assessment or the date the tax was paid, whichever came first. The *114 Presumptive Negligence penalty consists of two segments computed as follows: IRC 6653 (g)(1)(a) [sic]
1. 5% of $ 4891.02 which is
$ 244.55 plus IRC 6653 (a)(1)(b) [sic]
2. 50% of the interest payable
under IRC 6601 with respect to the portion of the underpayment to IRC 6653 (a)(1) [sic] In the answer, respondent asserts as follows: 3. Admits; alleges that respondent has determined additions to the tax in the amounts of $ 244.55, pursuant to I.R.C. § 6653(a)(1)(A), 50% of the interest due on $ 11,421.22.00 [sic], pursuant to I.R.C. § 6653(a)(1)(B), and $ 2,855.31, pursuant to I.R.C. § 6661. Respondent determined an addition to tax under section 6653(a)(1)(A) (the 5-percent addition) in the amount of $ 244.55. Although this Court has jurisdiction to redetermine a greater amount of the addition, this jurisdiction is conditioned on whether "claim therefor is asserted by the Secretary at or before the hearing or a rehearing." Sec. 6214(a).[16] Respondent has not asserted an increase in the addition to tax under section 6653(a)(1)(A). Accordingly, even if 5 percent of the underpayment is greater than $ 244.55, decision on this addition will not be entered in *115 any greater amount. Estate of Petschek v. Commissioner, 738 F.2d 67, 72 (2d Cir. 1984), affg. 81 T.C. 260, 271-272 (1983). Respondent's determination as to the time-sensitive portion of the negligence addition (the addition under sec. 6653(a)(1)(B)) fails to follow the usual format. That is, the notice of deficiency does not state in dollar amounts or percentages what is "the portion of such *116 underpayment which is attributable to negligence". The only clue presented is the Form 886-A explanation, which appears to link the determination to that part of the underpayment "attributable to the unreported interest, dividends, or other income", which presumably amounts to $ 4,891.02. In the answer, respondent claims that the notice of deficiency determination is that "$ 11,421.22" is due to negligence. The record does not include any indication that petitioners understood, before the answer, that respondent had determined that the entire underpayment was attributable to negligence. Compare the instant case with Bokum v. Commissioner, 94 T.C. 126, 127 n.2 (1990), affd. 992 F.2d 1132 (11th Cir. 1993). Respondent should not be permitted to benefit from the lack of clarity in respondent's own choice of language to be used in the notice of deficiency. See Rink v. Commissioner, 100 T.C. 319, 328 n.8 (1993), on appeal (6th Cir., Oct. 21, 1993); see also Keaty v. Freeport Indonesia, Inc., 503 F.2d 955, 957 (5th Cir. 1974); David Tunick, Inc. v. Kornfeld, 813 F. Supp. 988, 993 (S.D.N.Y. 1993). *117 We conclude that the more appropriate reading of the notice of deficiency is that respondent determined that the portion of petitioners' underpayment that was attributable to negligence was $ 4,891.02, and that that amount resulted from the omission of income items and not the disallowed deduction items. We will treat respondent's answer as a request for an increased addition to tax, on which respondent bears the burden of proof. Rule 142(a); Reiff v. Commissioner, 77 T.C. 1169, 1173 (1981). Thus, petitioners have the burden of proving that they were not negligent in their failure to report the Putnam dividend and capital gain distributions and the $ 32 of interest income. Respondent has the burden of proving that petitioners were negligent in taking the deductions for the Melville residence, tools and professional dues, and clothes and grooming expenses. Rule 142(a). Negligence is lack of due care or failure to do what a reasonable and ordinarily prudent person would do under the circumstances. Neely v. Commissioner, 85 T.C. 934, 947 (1985). Negligence includes any failure to make a reasonable attempt to comply *118 with the law. Sec. 6653(a)(3). (2) Omitted Income
We are not persuaded by Raymond's contention that he was not negligent because he was not aware of the Putnam income, either because of his contention that petitioners did not receive a Form 1099, or because of stock market events. Petitioners are not unsophisticated investors. On their 1987 tax return, they list 30 stock transactions involving three brokerage firms. In December 1986 petitioners invested $ 50,000 in Putnam. The dividends and capital gain distributions from Putnam in 1987 were substantial and the amounts thereof, see supra note 4, appear on Putnam's account statements. Petitioners have not suggested that they did not receive any Putnam account statements for 1987. If they had not received statements after making such a large investment, then they should have inquired. We believe that a reasonable and ordinarily prudent investor would be aware of this income. Further, if petitioners did not understand the tax treatment of the distributions from Putnam, then it was their responsibility to consult with a tax adviser who could explain the tax treatment, and failure to do so was negligent. Zmuda v. Commissioner, 79 T.C. 714, 729 (1982), *119 affd. 731 F.2d 1417, 1422-1423 (9th Cir. 1984) (negligence addition imposed where taxpayers did not make reasonable inquiry as to the income tax validity of their actions); Capodanno v. Commissioner, 69 T.C. 638, 650 (1978), affd. 602 F.2d 64 (3d Cir. 1979) (omission of interest income was negligent and taxpayer did not assert any reasonable ground for failing to include the interest). Raymond does not provide the Court with any evidence or contentions as to the $ 32 interest income. We conclude on the basis of the preponderance of the evidence, and we have found, that petitioners were negligent in failing to report the Putnam distributions. We conclude that petitioners have failed to carry their ordinary burden of proof as to negligence in their failure to report the $ 32 interest income. Accordingly, it is not necessary to consider the effect of section 6653(g), and the extraordinary burden of proof thereunder. See Auborn v. Commissioner, 93 T.C. 612, 618 (1989), affd. without published opinion 908 F.2d 961 (3d Cir. 1990). We hold for *120 respondent on this issue. (3) Melville Residence
Raymond contends that he was not negligent in taking the Melville residence deduction because he had taken this deduction since 1979 without challenge from respondent. Respondent contends that petitioners were negligent in taking this deduction because in 1987 Raymond had been working for Grumman for 9 years so his employment was clearly not temporary. Respondent has the burden of proving that petitioners were negligent in taking this deduction. Raymond has been taking this deduction since 1979. Raymond testified that respondent objected to the deduction in auditing petitioners' 1979 tax return, but "before we went to Court, the IRS backed off and settled". Respondent's counsel moved to strike this testimony as irrelevant. The Court denied the motion, explaining that it was relevant to the question of the negligence addition, if the Court were to uphold respondent on disallowing the deduction. Respondent's counsel agreed that it was relevant to the negligence addition. Raymond testified that he was convinced by this determination as to petitioners' 1979 tax return that he was entitled to the deduction. Raymond is a *121 credible witness. Respondent did not cross-examine on this issue or provide the Court with any evidence about the 1979 controversy or any other aspect bearing on negligence as to the Melville residence deduction. Although respondent's acquiescence on an item does not estop respondent from later challenging that item, see Thomas v. Commissioner, 92 T.C. 206, 221-225 (1989), it may be a factor to be considered as to whether the negligence addition to tax applies. In the circumstances of the instant case, we conclude that petitioners have the preponderance of the little evidence on the point, and that respondent has not carried her burden of proving that petitioners were negligent in taking the deduction for the Melville residence. We hold for petitioners on this issue. (4) Tools and Professional Dues
Respondent has the burden of proving that petitioners were negligent in taking the deduction for tools and professional dues. The record does not contain any evidence about these alleged expenses. At trial, respondent did not question Raymond about substantiation, or about whether his employer reimbursed him for these types of expenses. However, *122 the parties have stipulated that Raymond does not have receipts to substantiate any of these expenses. The burden of proof is on respondent, but based on Raymond's concession, we conclude, and we have found, that petitioners were negligent in taking this deduction because they failed to keep records of the alleged expenses. Failure to keep records to substantiate claimed deductions is negligent. Stovall v. Commissioner, 762 F.2d 891, 895 (11th Cir. 1985), affg. T.C. Memo. 1983-450; Crocker v. Commissioner, 92 T.C. 899, 917 (1989). We hold for respondent on this issue. (5) Clothes and Grooming
Respondent has the burden of proof as to the deductions for Felicia's clothes and grooming expenses. The evidence in the record shows that Felicia was not required to wear a uniform, that Stern did not have a dress code, and that Felicia was only required to wear clothes that were neat and clean and appropriate for the job. Raymond did not offer any testimony at trial about these alleged expenses, and respondent did not cross-examine Raymond on this issue. Firstly, the only evidence in the *123 record supports respondent's contention that Felicia's clothes were suitable for general or personal wear and so the cost of these clothes does not qualify as a business expense under section 162, but is a personal expense under section 262. See supra Part I.D. The rule that clothes and grooming are generally personal expenses is well settled, and we believe petitioners should have known that these expenses were not deductible. This is evidence of negligence. Secondly, on brief Raymond concedes that he does not have receipts to substantiate any of these expenses. Based on the preponderance of the evidence, we conclude, and we have found, that petitioners were negligent in taking this deduction. We hold for respondent on this issue. (6) Conclusions
We sustain the negligence addition to tax under section 6653(a)(1)(A) of $ 244.55, and we sustain the addition to tax under section 6653(a)(1)(B) on all of the deficiency except the portion attributable to the Melville residence. We hold in part for respondent and in part for petitioners on the negligence additions to tax. B. Substantial Understatement of Tax -- Sec. 6661
Section 6661(a)[17] provides for an addition *124 to tax in the amount of 25 percent of any underpayment attributable to a substantial understatement of tax. Sec. 6661(a); Pallottini v. Commissioner, 90 T.C. 498 (1988). An understatement is substantial if it exceeds the greater of 10 percent of the correct tax or $ 5,000. Sec. 6661(b)(1)(A). Our findings of fact and holdings make it clear that petitioners have a substantial understatement of tax for 1987. *125 Raymond's only contention in regard to section 6661 is that the addition to tax for substantial understatement should not be imposed because he claims that his income tax return for 1987 is correct as originally submitted. We have concluded that petitioners' income tax return was not correct, and that there is a substantial understatement of tax. Accordingly, we sustain the addition to tax under section 6661. We hold for respondent on this issue. To take account of the foregoing, concessions, and a question raised by the Court (see supra notes 3 and 4), Decision will be entered under Rule 155.
Footnotes
1. Petitioner Felicia A. Bermingham (hereinafter sometimes referred to as Felicia) did not appear at the trial in this case. Petitioners were married to each other during 1987, but not at the time of the trial. Petitioner Raymond J. Bermingham (hereinafter sometimes referred to as Raymond) was not authorized to represent Felicia. Respondent moved to dismiss the case against Felicia for failure to properly prosecute. The Court granted respondent's motion, but did not sever Felicia's case. The Court indicated that a decision would be entered as to Felicia in the same amounts and at the same time that decision is entered as to Raymond. Thus, Felicia remains a party in the instant case, see DeLucia v. Commissioner, 87 T.C. 804↩ (1986), but all of the contentions on petitioners' behalf at trial or on brief are, as a technical matter, made only by and on behalf of Raymond.
2. Of this amount, $ 10,744.72 is ch. 1 income tax; the remaining $ 676.50 is self-employment taxes under ch. 2. See infra note 3. Unless indicated otherwise, all chapter and section references are to chapters and sections of the Internal Revenue Code of 1986 as in effect for the year in issue.↩
3. Petitioners concede $ 32 of interest income. Respondent concedes Felicia's $ 676.50 self-employment tax.↩
1. Petitioner was employed by Volt Information Sciences, Inc., which assigned him to the indicated jobs. What we show as "Employer" is referred to in the employment agreements as "Customer" or "Client". No party contends that our analysis should be affected by whether Volt or Grumman was technically Raymond's employer.↩
4. The parties stipulated 1987 distribution amounts, corresponding to the notice of deficiency adjustments, totaling $ 13,792. Yet, the stipulated account transcript from Putnam shows that only $ 13,562.45 was reinvested, and the transcript accounts for the difference as "RTN OF CAPITAL". Also, a stipulated statement from Putnam to Raymond states that Putnam reported gross distributions of $ 13,562.45 and $ 231.01 as "Nontaxable Distributions" on the 1987 Form 1099-DIV. The parties are to account for this discrepancy in their computations under Rule 155.↩
5. On their tax return, petitioners claimed itemized deductions on Schedule A, which they properly carried to line 33a of their Form 1040; they properly left blank line 33b, which is for the standard deduction. Petitioners looked at a chart in respondent's 1987 Instruction Manual, which was intended to help taxpayers determine the correct amount of their standard deduction (in this instance, $ 5,600) and mistakenly put $ 5,600 on line 35. Line 35 is for personal exemptions. Petitioners claimed two personal exemptions and so should have put $ 3,800 (2 x $ 1,900) on line 35.↩
6. SEC. 262. PERSONAL, LIVING, AND FAMILY EXPENSES. Except as otherwise expressly provided in this chapter, no deduction shall be allowed for personal, living, or family expenses. [The later amendment of this provision by sec. 5073(a) of the Technical and Miscellaneous Revenue Act of 1988, Pub. L. 100-647, 102 Stat. 3342, 3682, does not affect the instant case.]↩
7. Sec. 162(a)(2) provides, in pertinent part as follows: SEC. 162. TRADE OR BUSINESS EXPENSES. (a) In General. -- There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including -- * * * (2) traveling expenses (including amounts expended for meals and lodging other than amounts which are lavish or extravagant under the circumstances) while away from home in the pursuit of a trade or business * * *
Sec. 1938(a) of the Energy Policy Act of 1992, Pub. L. 102-486, 106 Stat. 2776, 3033, amended sec. 162(a)↩ by adding at the end the following new sentence: "For purposes of paragraph (2), the taxpayer shall not be treated as being temporarily away from home during any period of employment if such period exceeds 1 year." This amendment applies to costs paid or incurred after Dec. 31, 1992, and so this amendment does not apply to the instant case.
8. Respondent does not contend that petitioners should lose on this issue because Raymond did not have a home to be away from. E.g., Brandl v. Commissioner, 513 F.2d 697 (6th Cir. 1975), affg. T.C. Memo. 1974-160. Thus, even though the evidence in the record herein does not show that Raymond ever lived in Felicia's Manhattan apartment (or elsewhere in Manhattan), we have set aside the Brandl↩ type cases in our analysis.
9. At trial, and on opening brief, as an alternative argument, Raymond contended that the expenses relating to the second home were deductible as a medical expense (presumably under sec. 213). However, on answering brief, Raymond specifically abandoned that argument, and so we do not consider it. UFE, Inc. v. Commissioner, 92 T.C. 1314, 1320-1321 (1989). In any event, see Donnelly v. Commissioner, 262 F.2d 411, 413 (2d Cir. 1959), affg. 28 T.C. 1278, 1279-1280 (1957); Polyak v. Commissioner, 94 T.C. 337, 342-347↩ (1990).
10. Unless indicated otherwise, all Rule references are to the Tax Court Rules of Practice and Procedure.↩
11. Under sec. 6213(b)(1) respondent may notify a taxpayer of a mathematical or clerical error in a tax return, and respondent may assess a tax on the basis on the notice. Such a notice is not considered a notice of deficiency. Sec. 6213(b)(1). Special abatement procedures are available to the taxpayer under sec. 6213(b)(2). Petitioners failed to make timely use of the abatement procedures; instead, they petitioned this Court. Docket No. 32133-88S. When the matter was drawn to our attention, in light of the specific language of the statute that "the taxpayer shall have no right to file a petition with the Tax Court based on such [correction] notice", sec. 6213(b)(1), we dismissed the petition for lack of jurisdiction.↩
12. The correction notice from respondent corrected three items: (1) the IRA deduction, (2) the personal exemption amount, and (3) the tax rate for long-term capital gains. The amount withheld from petitioners' 1988 income tax refund, $ 667.58, includes adjustments for all three items. Petitioner raises only the IRA deduction as an issue.↩
13. Sec. 219 provides, in pertinent part, as follows: SEC. 219. RETIREMENT SAVINGS. (a) Allowance of Deduction. -- In the case of an individual, there shall be allowed as a deduction an amount equal to the qualified retirement contributions of the individual for the taxable year. (b) Maximum Amount of Deduction. -- (1) In general. -- The amount allowable as a deduction under subsection (a) to any individual for any taxable year shall not exceed the lesser of -- (A) $ 2,000, or (B) an amount equal to the compensation includible in the individual's gross income for such taxable year.
* * * (g) Limitation on Deduction for Active Participants in Certain Pension Plans. -- (1) In general. -- If (for any part of any plan year ending with or within a taxable year) an individual or the individual's spouse is an active participant, each of the dollar limitations contained in subsections (b)(1)(A) and (c)(2) for such taxable year shall be reduced (but not below zero) by the amount determined under paragraph (2). (2) Amount of reduction. -- (A) In general. -- The amount determined under this paragraph with respect to any dollar limitation shall be the amount which bears the same ratio to such limitation as -- (i) the excess of -- (I) the taxpayer's adjusted gross income for such taxable year, over (II) the applicable dollar amount, bears to (ii) $ 10,000. * * * (3) Adjusted gross income; applicable dollar amount. -- For purposes of this subsection -- * * * (B) Applicable dollar amount. -- The term "applicable dollar amount" means -- (i) in the case of a taxpayer filing a joint return, $ 40,000, * * * (4) Special rule for married individuals filing separately. -- In the case of a married individual filing a separate return for any taxable year, paragraph (1) shall be applied without regard to whether such individual's spouse is an active participant for any plan year ending with or within such taxable year. (5) Active participant. -- For purposes of this subsection, the term "active participant" means, with respect to any plan year, an individual -- (A) who is an active participant in -- (i) a plan described in section 401(a) which includes a trust exempt from tax under section 501(a). * * * The determination of whether an individual is an active participant shall be made without regard to whether or not such individual's rights under a plan, trust, or contract are nonforfeitable. * * *↩
The text of subsec. (g)(4) includes amendments by sec. 1011(a) of the Technical and Miscellaneous Revenue Act of 1988, Pub. L. 100-647, 102 Stat. 3342, 3456, which were retroactive to 1987.
14. We note that if Raymond had filed a separate return, then Felicia's active participation in a tax-qualified plan would have been disregarded for purposes of the limitation on deduction. See. 219(g)(4). However, it may be that petitioners saved more in taxes as a result of other aspects of the law as to joint tax returns, than they lost as a result of the IRA contribution deduction disallowance.↩
15. Sec. 6653(a) and (g) provide, in pertinent part, as follows: SEC. 6653. ADDITIONS TO TAX FOR NEGLIGENCE AND FRAUD. (a) Negligence. -- (1) In General. -- If any part of any underpayment (as defined in subsection (c)) is due to negligence or disregard of rules or regulations, there shall be added to the tax an amount equal to the sum of -- (A) 5 percent of the underpayment, and (B) an amount equal to 50 percent of the interest payable under section 6601 with respect to the portion of such underpayment which is attributable to negligence for the period beginning on the last date prescribed by law for payment of such underpayment (determined without regard to any extension) and ending on the date of the assessment of the tax (or, if earlier, the date of the payment of the tax). * * * (3) Negligence. -- For purposes of this subsection, the term "negligence" includes any failure to make a reasonable attempt to comply with the provisions of this title, and the term "disregard" includes any careless, reckless, or intentional disregard.
* * * (g) Special Rule for Amounts Shown On Information Returns. -- If -- (1) any amount is shown on -- (A) an information return (as defined in section 6724(d)(1)), or (B) a return filed under section 6031, section 6037, section 6012(a) by an estate or trust, section 6050B, or section 6050E, and (2) the payee (or other person with respect to whom the return is made) fails to properly show such amount on his return,
any portion of an underpayment attributable to such failure shall be treated, for purposes of subsection (a), as due to negligence in the absence of clear and convincing evidence to the contrary. If any penalty is imposed under subsection (a) by reason of the preceding sentence, only the portion of the underpayment which is attributable to the failure described in the preceding sentence shall be taken into account in determining the amount of the penalty under subsection (a).
Sec. 1015(b)(3) of the Technical and Miscellaneous Revenue Act of 1988 (TAMRA), Pub. L. 100-647, 102 Stat. 3342, 3569, added the last sentence of subsec. (g), effective as if it had been enacted as part of the Tax Reform Act of 1986, Pub. L. 99-514, 100 Stat. 2085, effective for returns the due date for which (without regard to extensions) is after Dec. 31, 1986. Thus the last sentence of sec. 6653(g) applies to the instant case. The other subsequent amendments of this provision by TAMRA sec. 1015(b) do not affect the instant case. As a result of secs. 7721(a) and 7721(c)(1) of the Omnibus Budget Reconciliation Act of 1989 (OBRA1989) Pub. L. 101-239, 103 Stat. 2106, 2395, 2399, the revised negligence, etc., addition to tax now appears in sec. 6662.↩
16. SEC. 6214. DETERMINATIONS BY TAX COURT. (a) Jurisdiction as to Increase of Deficiency, Additional Amounts, or Additions to the Tax. -- Except as provided by section 7463, the Tax Court shall have jurisdiction to redetermine the correct amount of the deficiency even if the amount so redetermined is greater than the amount of the deficiency, notice of which has been mailed to the taxpayer, and to determine whether any additional amount, or any addition to the tax should be assessed, if claim therefor is asserted by the Secretary at or before the hearing or rehearing.↩
17. Sec. 6661 provides, in pertinent part, as follows: SEC. 6661. SUBSTANTIAL UNDERSTATEMENT OF LIABILITY. (a) Addition to Tax. -- If there is a substantial understatement of income tax for any taxable year, there shall be added to the tax an amount equal to 25 percent of the amount of any underpayment attributable to such understatement. (b) Definition and Special Rule. -- (1) Substantial understatement. -- (A) In general. -- For purposes of this section, there is a substantial understatement of income tax for any taxable year if the amount of the understatement for the taxable year exceeds the greater of -- (i) 10 percent of the tax required to be shown on the return for the taxable year, or (ii) $ 5,000. * * * (2) Understatement. -- (A) In general. -- For purposes of paragraph (1), the term "Understatement" means the excess of -- (i) the amount of the tax required to be shown on the return for the taxable year, over (ii) the amount of the tax imposed which is shown on the return, reduced by any rebate (within the meaning of section 6211(b)(2)).
Sec. 6661 was repealed by OBRA 1989 sec. 7721(c)(2), Pub. L. 101-239, 103 Stat. 2399. The substance of former sec. 6661↩ now appears as sec. 6662(d).