MARY CLARK DE BRABANT, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 75546. Promulgated August 18, 1936.

*William B. Gower, C. P. A.* and *Edward L. Blackman, Esq.*, for the petitioner.

*William E. Davis, Esq.*, and *S. B. Anderson, Esq.*, for the respondent.

OPINION.

LEECH: The respondent determined a deficiency in income tax, in the sum of $38,739.83, against the petitioner for the year 1930. Petitioner attacks this determination on the ground that it was taxable income to a trust and not to the petitioner as beneficiary thereof.

The facts, which were stipulated, are substantially as follows:

During all of the year 1930, and for approximately 12 years prior thereto, the Commercial Trust Co. of New Jersey, a New Jersey banking corporation, as trustee under a trust agreement with William A. Clark, dated February 16, 1918, held title to 36,000 shares of the capital stock of the United Verde Copper Co. As such stockholder, it received a distribution of $12 a share or a total of $432,000 on January 15, 1930, and on April 15, 1930, received a further distribution on such stock of $5 per share, or an aggregate of $180,000. Of these distributions, the Commercial Trust Co. of New Jersey, trustee, paid to the taxpayer, beneficiary, during the year 1930, $77,644.80 of the January 15 distribution, but retained and did not pay or credit to the petitioner the remainder of the distribution of January 15 nor any of the distribution of April 15. The grandchildren of the taxpayer, who were infants, were probable ultimate remaindermen under the trust agreement. The Commercial Trust Co. of New Jersey, trustee, retained and declined to pay or credit to the petitioner, beneficiary, any part of the above distributions in excess of the $77,644.80, in good faith and solely to protect itself from having to pay the same funds to two beneficiaries.

The distributions of the United Verde Copper Co. to the trustee, here, in 1930 and in prior years, were made in part from depletion reserve of that company set up pursuant to a determination of the Bureau of Internal Revenue to take account of the gradual exhaustion of its ore bodies. Late in 1929, questions arose with regard to the proper interpretation of the said trust agreement and with regard to other trust agreements made by said William A. Clark and by others, and whether this taxpayer and the other life beneficiaries were entitled to have paid to them annually all of the distributions made to the trust company by the United Verde Copper Co., or whether the trust company was obligated to retain from such distributions sufficient funds to keep the corpus of the trust intact in recognition of the fact that the value of the United Verde stock would constantly shrink with the extractions from the

mine; that is, retain and add to the capital of the trust the portions of the distributions made from depletion reserve.

The petitioner instituted suit in the courts of New Jersey against the Commercial Trust Co. of New Jersey, trustee, for construction of the trust agreement. On May 31, 1933, she obtained a judgment (*DeBrabant* v. *Commercial Trust Co.*, 166 Atl. 533) that she was entitled to the entire distributions of January 15 and April 15, above mentioned, under the trust agreement, regardless of whether they arose from profits or depletion reserve. That decree became final. The taxpayer received the amounts of those distributions in excess of the $77,644.80 received in 1930, subsequent to that year.

The pertinent provisions of the trust agreement are as follows:

THIRD: During the continuance of the trust payment of income shall be made as follows: to the said Mary Clark Kling during her life time and after her death to the living children of said Mary Clark Kling and the issue of any deceased child or children, the issue of any deceased child to take the share of the deceased ancestor.

All payments of income hereunder shall be made on the second days of January and July in each and every year. All income on hand at the time of the death of said Mary Clark Kling shall be paid to the person or persons entitled to the income of the trust fund upon her death, and no beneficiary hereunder shall be entitled to any income for any half year, or any part thereof, unless living at the time fixed for such payment.

FOURTH: The trustee shall make each and all of the payments above provided for, both of principal and interest, as soon as may be after the same shall become due and payable, pursuant to the terms of this agreement; and upon the termination of the trust by any of the contingencies above described, it shall assign, transfer, pay over, surrender and deliver to the person or persons entitled thereto all of the property, money or securities then comprising the trust fund, both principal and interest.

Payment of the principal shall be made in kind as far as possible by the transfer of the appropriate number of securities authorized hereunder for investment of the trust fund held by the Trustee at the time of such distribution or payment.

EIGHTH: In case securities are taken or purchased for the trust fund at a premium, the Trustee shall not be required to set aside any part of the income thereof as a sinking fund to retire or absorb such premium, or to make any other provision for possible depreciation in the value of the securities constituting the trust fund by reason of the approaching maturity of said securities or otherwise.

The petitioner was alive on July 2, 1930, and was on the cash basis.

The only question submitted is whether the amounts received by the Commercial Trust Co. of New Jersey, trustee, on January 15 and April 15, 1930, as dividends on the trusteed United Verde Copper Co. stock, and not distributed to the taxpayer, the petitioner, beneficiary of the trust, during that tax year, were taxable for that year to the trust or to the beneficiary, petitioner.

Sections 161 and 162 (b) of the Revenue Act of 1928 are controlling.[1]

Undoubtedly, the disputed income here was returnable for income tax purposes by the trust for 1930. Sec. 161 (a), *supra.*

But, the trust provided that "all payments of income hereunder shall be made on the second days of January and July in each and every year. All income on hand at the time of the death of said Mary Clark Kling shall be paid to the person or persons entitled to the income of the trust fund upon her death, and no beneficiary hereunder shall be entitled to any income for any half year, or any part thereof, unless living at the time fixed for such payment."

Thus, the contested amounts were mandatorily distributable by the trustee to the petitioner, beneficiary, on July 2, 1930, the year involved, and were, therefore, deductible by the trust and taxable to the petitioner, beneficiary, for that year, under section 162 (b), *supra,* unless, throughout 1930, after their receipt, such amounts were withheld or accumulated by the Commercial Trust Co. of New Jersey, trustee, "for the benefit of * * * unascertained persons or persons with contingent interests * * *."

Petitioner urges two positions.

First. It is argued that the latter section applies because "Income is being accumulated for the benefit of unascertained persons in all cases where the trustee refuses to pay out or credit the sum pending a judicial determination of conflicting claims." The premise of that argument is incorrect. The quoted part of the section upon which

---

[1] SEC. 161. IMPOSITION OF TAX.

(a) *Application of tax.*—The taxes imposed by this title upon individuals shall apply to the income of estates or of any kind of property held in trust, including—

(1) Income accumulated in trust for the benefit of unborn or unascertained persons or persons with contingent interests, and income accumulated or held for future distribution under the terms of the will or trust;

(2) Income which is to be distributed currently by the fiduciary to the beneficiaries, and income collected by a guardian of an infant which is to be held or distributed as the court may direct;

(3) Income received by estates of deceased persons during the period of administration or settlement of the estate; and

(4) Income which, in the discretion of the fiduciary, may be either distributed to the beneficiaries or accumulated.

(b) *Computation and payment.*—The tax shall be computed upon the net income of the estate or trust, and shall be paid by the fiduciary, except as provided in section 166 (relating to revocable trusts) and section 167 (relating to income for benefit of the grantor). For return made by beneficiary, see section 142.

SEC. 162. NET INCOME.

The net income of the estate or trust shall be computed in the same manner and on the same basis as in the case of an individual, except that—

* * * * * * *

(b) There shall be allowed as an additional deduction in computing the net income of the estate or trust the amount of the income of the estate or trust for its taxable year which is to be distributed currently by the fiduciary to the beneficiaries, and the amount of the income collected by a guardian of an infant which is to be held or distributed as the court may direct, but the amount so allowed as a deduction shall be included in computing the net income of the beneficiaries whether distributed to them or not. Any amount allowed as a deduction under this paragraph shall not be allowed as a deduction under subsection (c) of this section in the same or any succeeding taxable year.

petitioner relies taxes to the trust only that income which is "accumulated in trust for the benefit of * * * unascertained persons or persons with contingent interests * .* *." Thus, it is only where the identity of the beneficiary is unascertained or contingent that the quoted provision applies. Cf. *Benton Wilson*, 33 B. T. A. 649; *O. O. Owens*, 26 B. T. A. 1147; affirmed in part here material, 78 Fed. (2d) 768; *R. S. Goforth*, 32 B. T. A. 1206; *Augustus H. Eustis*, 30 B. T. A. 820. None of the authorities cited by petitioner, even the case of *Ferguson* v. *Forstmann*, 25 Fed. (2d) 47, upon which she heavily relies, though possibly *contra* to *Benton Wilson*, *supra*, contradict that statement.

Here the identity of the beneficiary under the trust was never uncertain. She was obviously always ascertained. She was named as beneficiary in the trust indenture. That beneficiary was petitioner. The only uncertainty, evidenced by this record, upon which the Commercial Trust Co. of New Jersey, trustee, withheld the contested amounts, was as to the legal status of those amounts under the trust agreement. Were they all or what part of them, if any, was capital and therefore not distributable under the pertinent trust contract? The trust withheld the controverted dividends not because of any uncertainty in the identity of the beneficiary, but solely because of uncertainty as to whether or not they were distributable under the trust.

Second. It is contended that the tenor of the pending trust indicates that the grantor's intention was that petitioner had no right to receive the controverted amounts unless she was alive when the litigation was concluded by the decision of the state courts affirming her right to that income under the trust. Since that litigation was not concluded during the tax year, it is then said that the petitioner, to whom such funds were distributable under the trust, on July 2 of the tax year, had only a contingent interest therein at that time and thus, under section 161 (a) (1), *supra*, and the decision of the Board in *Augustus H. Eustis*, *supra*, the trust, and not petitioner, beneficiary, was taxable thereon. However, that argument overlooks the distinguishing facts that petitioner, as beneficiary under the pending trust, was alive on July 2, 1930, and that the state courts, in construing the trust, held that she, as such beneficiary, had a present, unconditional, not a contingent right, on that date, to the contested income.

It is that right of petitioner, beneficiary, to receive the contested income then, not her actual or constructive receipt of such income during that year, which fixes her liability for the tax thereon, as income "currently distributable" during that year, under sections 161 (a) (2) and 162 (b), *supra*. The possession of that right to receive income, not its actual or constructive receipt, is the test of peti-

tioner's liability here. That is the applicable test announced in *Freuler* v. *Helvering*, 291 U. S. 35. In that case, where the trustee distributed to the beneficiary during the tax year, more than the proper state court held he then had a right to receive under the trust, rather than less, as was the fact here, the Supreme Court held that the beneficiary was taxable only on the amount which, in the tax year, he had the right then to receive. Cf. *Jack M. Franks*, 32 B. T. A. 260; and *Rita M. Kohler White*, 25 B. T. A. 243.

So here, the current distributability of the contested income to petitioner, the ascertained beneficiary, during the tax year, was ultimately controlled by the pending tax instrument as construed by the proper state courts. Those courts decided, finally, that petitioner had the present right to receive the income in question on July 2, 1930. That decision concludes us here. The disputed income was "currently distributable" during 1930, the year involved, by the trustee to petitioner, the ascertained beneficiary, and was, therefore, taxable to her for that year as such beneficiary and not to the trustee. Revenue Act of 1928, secs. 161 (a) (2) and 162 (b); *Freuler* v. *Helvering*, *supra*; *McCaughn* v. *Girard Trust Co.*, 19 Fed. (2d) 218; *Letts* v. *Commissioner*, 84 Fed. (2d) 760, affirming 30 B. T. A. 800; *Elnora C. Haag*, 19 B. T. A. 982.

In accordance with the stipulation, formally filed of record, the pending deficiency against petitioner is redetermined in the amount of $28,818.48.

*Judgment will be entered for the respondent.*