**ESTATE OF Ernst N. PETSCHEK, Deceased, Thomas H. Petschek and Asher Lans, Executors, Petitioners-Appellants,**

v.

**The COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.**

**No. 1020, Docket 83–4215.**

United States Court of Appeals, Second Circuit.

Argued April 27, 1984.

Decided June 21, 1984.

**68**

Asher B. Lans, New York City (Judith S. Jaffess, Burns, Summit, Rovins & Feldesman, New York City, of counsel), for petitioners-appellants.

Carleton D. Powell, Tax Div., Dept. of Justice, Washington, D.C. (Glenn L. Archer, Jr., Asst. Atty. Gen., Michael L. Paup, Patricia A. Willing, Tax Division, Dept. of Justice, Washington, D.C., of counsel), for respondent-appellee.

Before KAUFMAN, MESKILL and NEWMAN, Circuit Judges.

MESKILL, Circuit Judge:

This is an appeal from the judgment of the United States Tax Court, Nims, J., 81 T.C. 260, which held that appellants' decedent Petschek failed to report $136,547 of taxable trust income for 1975 and that Petschek was thus deficient in his income tax paid in the amount of $98,222.

We affirm the decision of the tax court.

## BACKGROUND

Appellants are the executors of the estate of the decedent Ernst N. Petschek. For many years prior to 1975, Petschek resided in France as a United States citizen. From January 1, 1975 to November 23, 1975, Petschek retained his non-resident citizen status. On November 24, 1975, however, Petschek renounced his United States citizenship and became a citizen of the Republic of France, where he lived for the remainder of 1975.

During 1975, Petschek was the sole income beneficiary of the Ernst Petschek Trust (Trust 5A). Trust 5A was part of an *inter vivos* trust established in 1955 by Petschek's father. Under the trust terms, the trustee was to distribute Trust 5A's net income at least annually to Petschek. The trustee could invade the corpus of the trust at his discretion for the use of Petschek, his spouse or issue.

Both Petschek and Trust 5A were calendar year, cash basis taxpayers in 1975. During 1975, Trust 5A realized $152,415 net dividend and interest income ($152,482 gross income less $67 actual expenses). No part of this income was derived from sources within the United States, nor was any part connected with the conduct of any business or trade within the United States. During 1975, the trustee distributed only current income. The trust, therefore, was a simple trust for that year within the purview of sections 651 and 652 of the Internal Revenue Act of 1954.

In 1975 Petschek paid $133,500 with respect to his estimated tax liability. Having relinquished his citizenship, however, Petschek reported no income from Trust 5A on his 1975 income tax return and sought a refund of the entire amount paid. The Commissioner issued a statutory notice of deficiency for 1975, contending that Petschek should have reported $136,547 taxable income from Trust 5A. This represented the net income realized by Trust 5A in 1975 prorated over the number of days in 1975 that Petschek was a United States citizen. Appellants petitioned the tax court for a redetermination of the deficiency and a refund of the 1975 taxes retained by the Commissioner.[1] In his brief to the tax

---

1. Other items were listed in the deficiency notice but appellants in their petition for re-determination have conceded tax liability as to those items. In 1978, the Commissioner refunded $38,543 to Petschek for the tax year 1975. Appellants sought an additional refund of $94,957. The Commissioner in turn claimed $3,265 from

court, the Commissioner claimed that in 1975 Petschek was required to report $136,-657 taxable income from Trust 5A, a different amount than was claimed in the deficiency notice. This figure was the trust's income of $136,717, actually received by Trust 5A between January 1, 1975 and November 23, 1975, less stipulated allocable expenses of $60. The Commissioner alternatively claimed that Petschek should have reported at least the $132,841 actual trust income distributed to him during the period in 1975 when he was a United States citizen.

Appellants contend that Petschek received no taxable income in 1975 from Trust 5A while he was a United States citizen and thus was not required to report any income from Trust 5A on his 1975 tax return.

The tax court, in its September 7, 1983 opinion, determined that the beneficiary of a simple trust receives trust income simultaneously with the trust's receipt of income. The court found Petschek liable for taxes on the income Trust 5A received in 1975 prior to Petschek's abandonment of his United States citizenship. Although the court stated that Petschek should have reported $136,657, it noted that the Commissioner failed to make a formal request for an increase of the amount claimed in its notice of deficiency. Under I.R.C. § 6214(a), the Commissioner was bound to the deficiency notice amount of $136,547. The court thus entered judgment for the Commissioner for $98,222, the amount of tax due on additional income of $136,547.

Appellants now claim that the tax court erred in determining that Petschek received taxable income from Trust 5A in 1975. They again argue that Petschek received taxable trust income only after he renounced his United States citizenship on November 24, 1975.

We reject appellants' argument and affirm the decision of the tax court.

appellants, the difference between the deficien-

## DISCUSSION

When an individual changes his status from non-resident United States citizen to non-resident alien during a taxable year, the individual's taxable year is divided into two periods. Treas.Reg. § 1.871–13(a), 26 C.F.R. § 1.871–13(a) (1983). In the period prior to the abandonment of citizenship, the individual is taxed as a non-resident citizen. *Id.* Generally, a non-resident United States citizen is taxed on his worldwide income. Treas.Reg. § 1.1–1(b), 26 C.F.R. § 1.1–1(b) (1983); *Cook v. Tait*, 265 U.S. 47, 44 S.Ct. 444, 68 L.Ed. 895 (1924). In the period subsequent to the abandonment of citizenship, the taxpayer is treated for tax purposes as a non-resident alien. Treas. Reg. § 1.871–13(a). A non-resident alien is taxed only on income derived from sources within the United States or effectively connected with the conduct of trade or business within the United States. I.R.C. § 872(a). Treasury Regulation section 1.871–13(c) explains how income is assigned for tax purposes:

(c) *Abandonment of U.S. citizenship or residence.* Income from sources without the United States which is not effectively connected with the conduct by the taxpayer of a trade or business in the United States is not taxable if *received* by an alien individual while he is not a resident of the United States, even though he earns the income earlier in the taxable year while he is a citizen or resident of the United States. However, income from sources without the United States which is not effectively connected with the conduct by the taxpayer of a trade or business in the United States is taxable if *received* by an individual while he is a citizen or resident of the United States, even though he abandons his U.S. citizenship or residence after its receipt and before the close of the taxable year.

26 C.F.R. § 1.871–13(c) (1983) (emphasis added).

None of Trust 5A's income was derived from sources within the United States or was effectively connected with the conduct

cy of $98,222 and $94,957, the amount retained.

of a trade or business in the United States.[2] Therefore, the only question on appeal is what part, if any, of Trust 5A's income Petschek received as a United States citizen.

Appellants maintain that Petschek received no trust income as a United States citizen. They argue that the amount of trust income to be included in Petschek's taxable income depends on Trust 5A's Distributable Net Income (DNI). Because the amount of the trust's DNI and thus Petschek's taxable income could not be calculated until the end of the trust's tax year, they reason, Petschek could not be deemed to have received income until that time. The end of Trust 5A's tax year was December 31, 1975, when Petschek was no longer a United States citizen.

The Commissioner argues that the conduit theory of trust taxation requires that Petschek be deemed to have received income from Trust 5A throughout 1975. Under the conduit theory, Petschek would "receive" or realize income from Trust 5A at the moment that it was received by the trust. Thus, the Commissioner contends that Petschek received the amount of income Trust 5A actually received while Petschek was a United States citizen in 1975, or $136,657.

■ We accept the Commissioner's legal position. I.R.C. sections 651 and 652 establish the basic statutory framework for the taxation of simple trusts and their distributions. Under section 652(a), the beneficiary of a simple trust includes as income the lesser of his share of the trust's DNI or his share of the income the trust is currently required to distribute (distributable income). The trust deducts a comparable amount from its income. I.R.C. § 651. The trust income has the same taxable character (capital gains, tax-exempt income, etc.) in the hands of the beneficiary as in the hands of the trust. I.R.C. § 652(b).

The legislative history of the Internal Revenue Act of 1954 indicates that this taxation scheme was based on the conduit theory of trusts:

The bill adheres to the conduit theory of the existing law. This means that an estate or trust is in general treated as a conduit through which income passes to the beneficiary. In order to implement this theory in a satisfactory manner, it is necessary to include in the measure items of income and deductions which are not reflected in taxable income. The bill adopts the concept of "distributable net income" as the measure and adjusts the amount of the distributions deductible by the estate or trust and taxable to the beneficiaries by eliminating not only capital gains and losses but items of income and expenses which do not enter into the computation of taxable income. Thus, the distributable net income of an estate or trust is defined as its taxable income for the current year, excluding capital gains and losses not distributed by the estate or trust, the portion of extraordinary cash dividends and taxable stock dividends allocated to principal (in the case of simple trusts described below), and the dividends received exclusion, but including tax-exempt interest and foreign income of foreign trusts.

H.R.Rep. No. 1337, 83d Cong., 2d Sess. 61, *reprinted in* 1954 U.S.Code Cong. & Ad. News 4017, 4087.

Under the conduit theory, the beneficiary of the trust realizes income at the moment the trust receives the income. That the trust's receipt of income determines the beneficiary's tax liability is illustrated by *Freuler v. Helvering*, 291 U.S. 35, 54 S.Ct. 308, 78 L.Ed. 634 (1934), and *De Brabant v. Commissioner*, 34 B.T.A. 951, 955–56 (1936), *aff'd*, 90 F.2d 433 (2d Cir.1937). In

---

**2.** As a trust beneficiary, Petschek would be deemed to have received income derived from *sources* within the United States, 26 U.S.C. § 652(b) (1982); Treas.Reg. § 1.652(b)–1, 26 C.F.R. § 1.652(b)–1 (1983), or income effectively connected with the conduct of a trade or business within the United States, 26 U.S.C. § 875(2), only if the trust had received such income. *Di Portanova v. United States,* 690 F.2d 169, 172 (Ct.Cl.1982) (conduct of trade or business); *Bence v. United States,* 18 F.Supp. 848, 852 (Ct.Cl.1937) (sources).

*Freuler*, the trustee failed to withhold from the trust beneficiaries a depreciation deduction from the trust's income. When the beneficiaries did not include the distributed depreciation deduction as income, the Commissioner claimed that this amount had been distributed to the beneficiaries and thus was taxable. The Supreme Court limited the petitioner beneficiary's taxable income to the amount that the trustee should have distributed without the error, stating:

> [T]he beneficiary's share of the income is considered his property from the moment of its receipt by the estate. . . . For the purpose of imposing the tax, the Act regards ownership, the right of property in the beneficiary, as equivalent to physical possession. The test of taxability to the beneficiary is not receipt of income, but the present right to receive it.

291 U.S. at 42, 54 S.Ct. at 311. *See United California Bank v. United States*, 439 U.S. 180, 199, 99 S.Ct. 476, 486, 58 L.Ed.2d 444 (1978) (income of estate treated as income of charitable beneficiary "from the moment of its receipt" by the estate); *Statler Trust v. Commissioner*, 361 F.2d 128, 131 (2d Cir.1966) (income of trust treated as income of beneficiary from moment of its receipt by the trust).

Similarly, in *De Brabant v. Commissioner*, a trustee erroneously withheld income from the beneficiary in the belief that the amount represented principal, not interest. In a later tax year, a state court determined that the withheld amounts were indeed interest and directed their distribution. Even though the beneficiary had no access to the amount withheld until after the state adjudication, the Board of Tax Appeals held that the beneficiary was taxable on the amounts in the year that they should have been distributed. The Board stated:

> It is that right of petitioner, beneficiary, to receive the contested income then, not her actual or constructive receipt of such income during that year, which fixes her liability for the tax thereon, as income "currently distributable" during that year . . . . The possession of that right to receive income, not its actu-

al or constructive receipt, is the test of petitioner's liability here.

34 B.T.A. at 955–56.

*Grant v. Commissioner*, 11 T.C. 178 (1948), *aff'd*, 174 F.2d 891 (5th Cir.1949), clearly shows that the beneficiary realizes income simultaneously with the trust's receipt of income. In *Grant*, the beneficiary of the trust could elect to receive a distribution of trust income at the end of each year. For two years, the beneficiary refused any distribution of trust income and finally renounced the income of the trust in June of the third year. The tax court held that the beneficiary was taxable on the entire trust income for two years and on the part received in the third year before her renunciation. The court explained:

> She had the "realizable" economic gain necessary to make the income taxable to her. The trust provision "at the end of each calendar year" relates to the time when the trustees should pay the beneficiary the trust income, and not to the time of election as contended by petitioner.

11 T.C. at 181.

▮ Because the conduit theory governs the taxability of Petschek's trust income, we must reject appellants' suggestion that the date of calculating DNI determines when the beneficiary is deemed to receive income. DNI is an artificial concept introduced into the Internal Revenue Code to ensure that the beneficiary of the trust is not taxed on more than the trust's actual net income. In other words, DNI was created to give "statutory expression to the principle underlying the taxation of estates and trusts, that is, that these separate taxable entities are only conduits through which income flows to the beneficiaries except where income is accumulated by the estate or trust for future distribution." H.R.Rep. No. 1337 at A–194, *reprinted in* 1954 U.S.Code Cong. & Ad.News at 4334.

Although DNI ordinarily is not calculated until the end of the year, DNI is composed of the trust's receipts and deductions throughout the entire year (with minor ex-

ceptions not relevant to this discussion). I.R.C. § 643. Contrary to appellants' position, interim calculations of DNI, as well as distributable income, can be made at any time during the taxable year. The tax court in 1948 made an interim calculation of distributable income in *Grant v. Commissioner*, 11 T.C. at 180. The 1954 Code, which introduced the concept of DNI, provides for interim calculations of both DNI and distributable income when the existence of a beneficiary which is not an individual terminates. *See* Treas.Reg. § 1.652(c)–3, 26 C.F.R. § 1.652(c)–3 (1983).

Appellants point out that an interim calculation of distributable income or DNI may exceed the distributable income or DNI measured at the end of the year. But a later downward adjustment of the interim distributable income or DNI will ensure that the beneficiary will not be overtaxed. In the present case, we need not explore the mechanisms for downward adjustments of interim calculations because the parties have stipulated to the amount of trust income and deductions for the period of 1975 that Petschek was a United States citizen.

Appellants also erroneously assert that I.R.C. § 652(c) implies that trust income is only included in the beneficiary's income at the end of the trust's taxable year. Section 652(c) provides that when the taxable years of the beneficiary and the trust differ, the beneficiary must include in taxable income the trust income for the trust's taxable year ending with or within the beneficiary's taxable year. Clearly, section 652(c) is inapplicable to the instant case because the tax years of Trust 5A and Petschek are the same. Furthermore, the operation of section 652(c) presupposes the continuation of the beneficiary's and the trust's respective taxpayer statuses from year to year. In the instant case, Petschek's taxpayer status changed on November 24, 1975. In addition, section 652(c) covers only the termination of the trust's and the beneficiary's tax years; Petschek's tax year did not end with his abandonment of his citizenship. *See Nico*

*v. Commissioner*, 565 F.2d 1234, 1236 (2d Cir.1977).

Appellants finally argue that Trust 5A should not be treated as a conduit because it is a separate taxable entity, unlike a grantor trust, and because some items received by the trust, for example, capital gains, might not be passed through to Petschek. This argument is unavailing. All of the interest and dividend income that Trust 5A received in 1975 was passed through to Petschek as required by the trust instrument. Thus, even though Trust 5A was a separate taxable entity, it operated as a pure conduit in 1975.

Under the conduit theory, Petschek received income from Trust 5A at the moment the income was received by the trust. Petschek is thus taxable on the amount of income Trust 5A actually received, less allocable deductions, between January 1, 1975 and November 23, 1975 inclusive. Both parties agree that Trust 5A received $136,657 in net income in that period. As noted, however, the tax court entered the amount of Petschek's taxable income as $136,547, the amount the Commissioner claimed in the deficiency notice. We need not evaluate the court's determination that it was bound to this amount because the IRS failed to make a formal request for a change in the deficiency notice as required under I.R.C. § 6214(a). *See Moise v. Burnet*, 52 F.2d 1071, 1073 (9th Cir.1931). Both parties agree to the calculation of $136,547 as the amount of unreported income from the trust in 1975 and of $98,222 as the tax deficiency.

The judgment of the tax court holding that Petschek failed to report $136,547 in income from Trust 5A in 1975 and assessing a tax deficiency of $98,222 is affirmed.