TOOL PRODUCERS, INC., Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Tool Producers v. Commissioner
Docket No. 19308-93.
United States Tax Court
T.C. Memo 1995-407; 1995 Tax Ct. Memo LEXIS 408; 70 T.C.M. (CCH) 487; August 22, 1995, Filed *408 Decision will be entered for Respondent. John Kennedy Lynch, for petitioner. Marc A. Shapiro, for respondent. VASQUEZ, Judge VASQUEZ
MEMORANDUM OPINION VASQUEZ, Judge: Respondent determined a deficiency in petitioner's Federal income tax in the amount of $ 87,430.00 and an addition to tax under section 6653(a) [1] of $ 4,371.50 for its taxable year ending December 31, 1988. After concessions, [2] the issues for decision are: (1) Whether petitioner's net operating loss carry forwad to 1988 should be increased to reflect amounts paid and/or *409 diverted to its president-shareholder during the taxable years 1983 through 1986; (2) whether petitioner is entitled to a compensation deduction for amounts paid and/or diverted to its two officer-shareholders during the taxable year 1988; and (3) whether petitioner is liable for an addition to tax under section 6653(a). Background
This case was submitted fully stipulated pursuant to Rule 122(a). All of the facts are stipulated and are so found. [3] The stipulation of facts and attached exhibits are incorporated herein by this reference. Petitioner was incorporated in Ohio in 1947. At the time the petition was filed, petitioner's mailing address was in Ohio. [4] During the years 1983 through 1988, petitioner was in the business of manufacturing tools and dies for the automobile industry and was owned by two brothers, Frederick and Joseph Biacsi. Each brother owned 50 percent *410 of petitioner's stock; Frederick Biacsi was president of petitioner, and Joseph Biacsi was an officer of petitioner during the years in issue. During the taxable years 1983 through 1986, petitioner failed to include on its books and records or report on its corporate income tax returns some of the income generated from the sale of scrap to M. Weingold & Co. The amounts of unreported scrap income, by year, are as follows: Year
Amount
1983
$ 63,712
1984
68,842
1985
68,000
1986 27,178
These amounts were ordinary income to petitioner. In April of 1986, the Internal Revenue Service (IRS) started an audit of petitioner's corporate income tax returns for the years 1983 and 1984, and of the individual income tax returns of Frederick and his wife, Donna Biacsi, for the years 1983 and 1984. The 1985 and 1986 taxable years of both petitioner and Frederick and *411 Donna Biacsi were subsequently added to the audit. The IRS audit resulted in proposed adjustments to petitioner's gross receipts for the taxable years 1983, 1984, 1985, and 1986 in the amounts of $ 63,712, $ 68,842, $ 68,000, and $ 27,178, respectively, for unreported scrap income. During the audit petitioner conceded that the omitted scrap income was includable in income but alleged that it was entitled to corresponding compensation deductions. However, because undisputed net operating loss carryforwards exceeded the proposed adjustments to income, no notice of deficiency was issued to petitioner with respect to its 1983 through 1986 taxable years. In October of 1987, 18 months after the start of the IRS audit of petitioner, Frederick and Donna Biacsi filed amended individual income tax returns for each of the taxable years 1983 through 1986. These amended individual returns for the 1983, 1984, 1985, and 1986 taxable years reported additional income in the exact amounts that petitioner omitted from its corporate tax returns for scrap sales; i.e., $ 63,712, $ 68,842, $ 68,000, and $ 27,178, respectively. The explanation attached to each amended return was: "Receipts from employer *412 corporation were originally thought to be loan repayments and advances but were subsequently determined to be taxable income categorized as commissions." For the taxable years 1987 and 1988, petitioner again failed to include on its books and records or report on its originally filed corporate income tax returns some of the income generated from the sale of scrap to M. Weingold & Co. The amounts of omitted scrap income for 1987 and 1988 were $ 62,068.49 and $ 84,188.00, respectively. These amounts were also ordinary income to petitioner. [5]
*413 Frederick Biacsi and Joseph Biacsi each included one-half of the unreported 1987 and 1988 scrap income on their respective 1987 and 1988 individual tax returns, as originally filed, under the heading of "Other income". An IRS audit of petitioner's 1988 corporate tax return began in April of 1991. In April of 1992, petitioner filed an amended corporate income tax return for the taxable year 1988 which showed additional income of $ 84,188 and an additional deduction of $ 84,188. In the explanation section, petitioner stated: "This amendment is being filed as a result of an inadvertent bookkeeping error." Petitioner claimed that there was no additional tax due or amount to be refunded because of the offsetting deductions. Discussion
Net Operating Loss--Diverted Funds
The first issue is whether petitioner is entitled to a net operating loss carryover to 1988 in excess of that allowed by respondent. In the notice of deficiency, respondent reduced petitioner's net operating loss carryover to 1988 to reflect the amounts of scrap income that petitioner failed to include in its 1983, 1984, 1985, and 1986 tax returns. Petitioner concedes that the scrap income in the amounts set *414 forth in the findings of fact was omitted from its books and corporate tax returns for those years but asserts offsetting deductions for compensation to its president-shareholder. Respondent contends that petitioner is not entitled to such deductions. Section 162(a)(1) allows a deduction for "a reasonable allowance for salaries or other compensation for personal services actually rendered". We have described this test for deductibility as being "two-pronged"--the compensation payments must be both reasonable and in fact payments purely for services. Electric & Neon, Inc. v. Commissioner, 56 T.C. 1324, 1340 (1971), affd. without published opinion sub nom. Jiminez v. Commissioner, 496 F.2d 876 (5th Cir. 1974). The second prong, which we will focus on, has been consistently interpreted to mean that the questioned payments must be made with an intent to compensate. Whitcomb v. Commissioner, 733 F.2d 191, 193 (1st Cir. 1984), affg. 81 T.C. 505 (1983); King's Ct. Mobile Home Park, Inc. v. Commissioner, 98 T.C. 511, 514 (1992); Paula Constr. Co. v. Commissioner, 58 T.C. 1055, 1058 (1972), *415 affd. without published opinion 474 F.2d 1345 (5th Cir. 1973); sec. 1.162-7(a), Income Tax Regs. Additionally, transactions between closely held corporations and their shareholders are examined with close scrutiny. Paula Constr. Co. v. Commissioner, supra at 1058; Electric & Neon, Inc. v. Commissioner, supra at 1339. It is a question of fact whether payments are made with an intent to compensate for services performed. Whitecomb v. Commissioner, supra at 194; Paula Constr. Co. v. Commissioner, supra at 1058-1059. Petitioner bears the burden of showing that it is entitled to compensation deductions. Rule 142(a); Welch v. Helvering, 290 U.S. 111 (1933); Nor-Cal Adjusters v. Commissioner, 503 F.2d 359, 362 (9th Cir. 1974), affg. T.C. Memo. 1971-200. The relevant time for determining the requisite intent is when the purported compensation payment is made, not years later when an amended return is filed after the start of an IRS audit. King's Ct. Mobile Home Park, Inc. v. Commissioner, supra at 514; *416 Paula Constr. Co. v. Commissioner, supra at 1059-1060. The amended joint returns filed by Frederick and Donna Biacsi for the taxable years 1983 through 1986 do not show that petitioner had the intent to compensate Frederick at the time the payments were purportedly made. The original returns for 1983 through 1986 filed by Frederick and Donna Biacsi reported no such compensation, which indicates that Frederick Biacsi did not consider the payments to be income at the time the returns were filed. Similarly, the following explanation given on each of the amended joint returns filed in October of 1987 indicates that Frederick Biacsi, president and 50-percent shareholder of petitioner, did not believe petitioner's payments to him were intended to be compensation when made in 1983 through 1986: "Receipts from employer corporation were originally thought to be loan repayments and advances but were subsequently determined to be taxable income categorized as commissions." Petitioner failed to report the scrap income on its corporate tax returns for the taxable years 1983 through 1986 and on its corporate books and records. No corporate records or Forms 1099 *417 were offered as exhibits, no stipulations dealt with petitioner's intent, and there was no testimony from petitioner's officer-shareholders. The record does not show how, when, or in what form (if at all) the purported commissions were paid. "The fact that a case is fully stipulated does not change the burden of proof." Borchers v. Commissioner, 95 T.C. 82, 91 (1990), affd. 943 F.2d 22 (8th Cir. 1991). We hold that petitioner has failed to show that any such payments to petitioner's president-shareholder were intended to be compensation. We also note that there is no evidence in the record that the amount of wages, after inclusion of the diverted funds, constituted reasonable compensation. King's Ct. Mobile Home Park, Inc. v. Commissioner, supra at 514-515; Electric & Neon, Inc. v. Commissioner, supra at 1340. Petitioner argues that the payments in years 1983 through 1986 must be deductible compensation since it had losses in those years. [6] However, petitioner's corporate income tax returns show positive retained earnings at all times in question and showed *418 a profit for 1984 before application of a net operating loss deduction. No evidence was introduced to show petitioner's accumulated earnings and profits other than corporate income tax returns. Even if petitioner was shown to have made payments to Frederick Biacsi in amounts exceeding its current and accumulated earnings and profits, such payments would not qualify as deductible compensation in the absence of proof that they were intended to be paid as compensation. B.B. Rider Corp. v. Commissioner, 725 F.2d 945 (3d Cir. 1984), affg. T.C. Memo. 1982-98; Electric & Neon, Inc. v. Commissioner, supra at 1341. Accordingly, we hold that petitioner has failed to carry its burden of proof that any funds were paid to its president- shareholder in 1983, 1984, 1985, and 1986 as compensation. Consequently, petitioner *419 is not entitled to the claimed compensation deductions. Petitioner's net operating loss carryover to 1988 must be reduced to reflect the scrap sales income that was omitted from petitioner's 1983 through 1986 gross receipts. Diverted Funds -- Current Year
The second issue is whether petitioner is entitled to compensation deductions for amounts paid and/or diverted to its two officer-shareholders during the taxable year 1988. The same analysis and case law as we discussed under the first issue also apply to this second issue. For the year 1988 petitioner again failed to include some of its income from scrap sales to M. Weingold & Co. on its books and records or report the income on its originally filed corporate tax return. The only documents in the record that relate to this issue are tax returns offered as exhibits. An amended 1988 corporate income tax return filed by petitioner in April of 1992, 1 year after the IRS began an audit of petitioner's 1988 tax year, reports income of $ 84,188 and an offsetting deduction of $ 84,188. [7] However, the explanation attached to the corporate amended return made no reference to omitting a compensation deduction; it simply stated that *420 "This amendment is being filed as a result of an inadvertent bookkeeping error." The Biacsi brothers filed timely 1987 and 1988 individual income tax returns which reported "Other income" in the amounts omitted from petitioner's corporate return. However, these returns, standing alone, are insufficient to carry petitioner's burden. Again, no corporate records or Forms 1099 were offered as exhibits, no stipulations dealt with petitioner's intent, and there was no testimony from petitioner's officer-shareholders. Furthermore, no evidence was presented that the amount of wages paid in 1988, after inclusion of the diverted funds, constituted reasonable compensation. *421 We hold that petitioner has failed to carry its burden of proof that any funds diverted or paid in 1988 to its two officer-shareholders were paid as compensation. Section 6653(a) Addition
As to the addition to tax for negligence under section 6653(a), we also hold for respondent. Negligence is the failure to exercise due care or the failure to act as a reasonable and prudent person. Neely v. Commissioner, 85 T.C. 934, 947 (1985). Petitioner has offered no evidence that the omission of scrap income from its Federal income tax returns was not due to negligence or intentional disregard of rules or regulations. Petitioner has failed to meet its burden of proving that respondent's determination of negligence is erroneous. Rule 142(a). To reflect the foregoing, Decision will be entered for respondent. Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. Petitioner conceded that respondent's disallowance of travel and entertainment expenses for the taxable years 1983, 1984, 1985, and 1986 in the amounts of $ 7,726, $ 8,691, $ 4,149, and $ 1,196, respectively, and $ 5,677 of office expenses for the taxable year 1984 is proper.↩
3. The record is sparse, i.e., a six-page stipulation of facts, with exhibits consisting only of tax returns and the notice of deficiency.↩
4. The parties did not stipulate petitioner's principal place of business; however, we conclude that petitioner's principal place of business was Ohio.↩
5. The record does not state if petitioner's 1987 taxable year was audited by the IRS. However, petitioner stipulates that $ 62,068.49 in income from scrap sales was omitted from its 1987 return. Additionally, petitioner has not argued that it is entitled to a corresponding compensation deduction for its 1987 taxable year. However, respondent has made no adjustment to petitioner's income for 1987 and has not asked for an increased deficiency, so we shall not enter a decision for any greater amount than that determined in the notice of deficiency. Sec. 6214(a); Estate of Petschek v. Commissioner, 81 T.C. 260, 271-272 (1983), affd. 738 F.2d 67, 72↩ (2d Cir. 1984).
6. Petitioner's 1984 Federal income tax return shows taxable income, before a net operating loss deduction, of $ 114,395.↩
7. See Mores Steel Co. v. Commissioner, T.C. Memo. 1981-35↩, where funds diverted to 50-percent officer-shareholders were held not to be compensation because the funds were not paid with the intent to compensate, even though the officer-shareholders voluntarily disclosed the diverted income and filed amended tax returns before an IRS audit developed.