T.C. Summary Opinion 2007-210

UNITED STATES TAX COURT

LISA J. TOMLINSON, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket Nos. 16445-05S, 6086-06S.  Filed December 17, 2007.

Lisa J. Tomlinson, pro se.

Margaret Burow, for respondent.

RUWE, Judge:  These cases were heard pursuant to the
provisions of section 7463[1] of the Internal Revenue Code in
effect when the petition was filed.[2]  Pursuant to section

_____

[1] Unless otherwise indicated, all section references are to
the Internal Revenue Code in effect for the years in issue, and
all Rule references are to the Tax Court Rules of Practice and
Procedure.

[2] Respondent issued separate notices of deficiency for 2002
and 2003, respectively.  Petitioner filed a separate petition for
(continued...)

7463(b), the decisions to be entered are not reviewable by any other court, and this opinion shall not be treated as precedent for any other case.

Respondent determined deficiencies in petitioner's 2002 and 2003 Federal income taxes of $16,928 and $5,189, respectively, and an addition to tax for failure to file timely a tax return under section 6651(a)(1) of $774 for 2003.  After concessions by respondent,[3] the issues remaining for decision are:  (1) Whether petitioner is entitled to deduct medical expenses of $6,966.21 claimed on her Schedule A, Itemized Deductions, for 2003; (2) whether petitioner is entitled to deduct business expenses of $77,267 and $32,018 claimed on her Schedules C, Profit or Loss From Business, for 2002 and 2003, respectively; and (3) whether petitioner is liable for an addition to tax under section 6651(a)(1) for failure to file timely a return for 2003.

---

[2](...continued)
each year.  Due to the similarity of the issues, the Court granted respondent's motion to consolidate for trial, briefing and opinion on Dec. 6, 2006.

[3] Respondent concedes that petitioner is entitled to deduct Schedule A, Itemized Deductions, of $30,477 for home mortgage interest paid during 2002, $6,149 for charitable contributions made in 2002, and $17,264 for a casualty loss for property in 2003.  Respondent also concedes that petitioner has substantiated $6,929.79 of the $13,896 in medical expenses claimed on her 2003 return.

## Background

Some of the facts have been stipulated and are so found. The stipulations of facts, supplemental stipulation of facts, and the attached exhibits are incorporated by this reference. When the petitions were filed, petitioner resided in Oakland, California.

For approximately the first 7 months of 2002, petitioner was employed full time with Versata, Inc., as the vice president of human resources. Petitioner subsequently received disability income as a result of a health condition that prevented her from working.

On May 2, 2004, petitioner untimely filed a 2002 income tax return on which she reported income from wages, salaries, tips, etc. of $88,540,[4] interest income of $1,134, a taxable refund of State and local income tax of $6,242, and a Schedule C business loss of $77,267. On June 17, 2005, respondent issued to petitioner a notice of deficiency for 2002.

On January 3, 2005, petitioner untimely filed a 2003 income tax return on which she reported income from wages, salaries, tips, etc., of $90,250,[5] interest income of $779, dividends of

---

[4] The Forms W-2, Wage and Tax Statement, attached to petitioner's 2002 return show that she received $51,040.34 from Versata, Inc., and $37,500 from CNA Group Life Assurance Co.

[5] The Form W-2 attached to petitioner's 2003 return shows that she received $90,250 from CNA Group Life Assurance Co.

$16, and a Schedule C business loss of $32,018.  On January 13, 2006, respondent issued to petitioner a notice of deficiency for 2003.

## Discussion

### Schedule A Medical Expenses

Expenses paid during the taxable year, not compensated for by insurance or otherwise, for medical care of the taxpayer, her spouse, or a dependent shall be allowed as a deduction to the extent that such expenses exceed 7.5 percent of adjusted gross income.  Sec. 213(a).  The term "medical care" includes amounts paid for insurance covering medical care.  Sec. 213(d)(1)(D).

On her 2003 return, petitioner claimed itemized deductions for medical expenses.  Petitioner failed to substantiate the $6,966.21 in medical expenses that remain in dispute.  In an attempt to substantiate the disputed medical expenses, petitioner produced evidence of payments made to National Finance Center. The purpose of these payments is not clear.  Copies of several of the canceled checks and cashier's checks that document these payments contain writing that was scratched out.  Petitioner testified that the scratched out writing was her Social Security number.  However, the writing that was scratched out on the cashier's checks visibly indicates the checks were made out for Jon Tomlinson, who is petitioner's brother.  Jon Tomlinson was not petitioner's dependent for tax purposes.  Respondent's

disallowance of the disputed remaining medical expenses is sustained.

Schedule C Expenses

Deductions are a matter of legislative grace, and taxpayers bear the burden of proving that they are entitled to any deductions claimed. Rule 142(a); INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934). Taxpayers are required to maintain sufficient records to enable the Commissioner to determine their correct tax liability. Sec. 6001.

Section 162 generally allows a deduction for all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business. Such expenses must be directly connected with or pertain to the taxpayer's trade or business. Sec. 1.162-1(a), Income Tax Regs. Whether an expenditure satisfies the requirements of section 162 is a question of fact. Commissioner v. Heininger, 320 U.S. 467, 475 (1943).

Whether a taxpayer's activities constitute the carrying on of a trade or business requires an examination of the particular facts and circumstances of each case. Commissioner v. Groetzinger, 480 U.S. 23, 36 (1987). Carrying on a trade or business requires a showing of more than an initial investigation

of business potential. <u>Dean v. Commissioner</u>, 56 T.C. 895, 902 (1971); <u>Glotov v. Commissioner</u>, T.C. Memo. 2007-147.

Personal, living, or family expenses are not deductible. Sec. 262. Similarly, deductions for expenditures that are properly categorized as capital expenditures are not allowable. Sec. 263. In order for petitioner to be entitled to deduct her claimed Schedule C expenses she must satisfy the requirements of section 162. Additionally, certain expenses warrant the heightened substantiation requirements of section 274(d) and the regulations thereunder.

Petitioner's return for 2002 contains a Schedule C for "ASIL Investments" on which she reported zero gross receipts and a net loss of $77,267. Respondent disallowed all of the claimed deductions for expenses, which were listed on petitioner's 2002 Schedule C as follows:

| Expenses | Amount |
|---|---|
| Car and truck expenses | $1,230 |
| Depreciation | 4,196 |
| Insurance | 1,600 |
| Legal and professional services | 12,115 |
| Office expense | 10,132 |
| Rent or lease of other business property | 4,152 |
| Supplies | 5,936 |
| Travel | 10,706 |
| Meals and entertainment | 5,845 |
| Wages | 1,490 |
| Accounting | 1,832 |
| Answering service | 495 |
| Club membership | 3,170 |
| Delivery and freight | 757 |
| Gifts | 1,226 |

| | |
|---|---|
| Internet services | 168 |
| Membership fees | 404 |
| Parking and tolls | 1,827 |
| Photography | 2,037 |
| Postage | 1,785 |
| Professional development | 245 |
| Subscriptions and publications | 702 |
| Telephone | 5,217 |
| Total | 77,267 |

Petitioner claims that ASIL Investments was a real estate investment business that she began while she worked full time at Versata, Inc. Petitioner testified that she took a number of courses and looked at a variety of properties in 2002. Petitioner testified that she made some offers on properties; however, she provided no other evidence of these offers. There is no evidence that petitioner ever completed a purchase of property. Petitioner received no income from ASIL Investments in 2002 and abandoned the venture early in 2003.

If any of the expenses incurred by petitioner were in relation to a real estate investment venture, they appear to be in the nature of investigating the business potential of creating a real estate investment business or preparing to start such a business. In order to deduct expenses under section 162, the expenses must relate to a functioning business at the time the expenses were incurred. Glotov v. Commissioner, supra.

Section 195(a) provides: "Except as otherwise provided in this section, no deduction shall be allowed for start-up

expenditures."  Section 195(c)(1) defines "start-up expenditure"
as:

> (1) * * * any amount--
>
>> (A) paid or incurred in connection with--
>>
>>> (i) investigating the creation or acquisition of an active trade or business, or
>>>
>>> (ii) creating an active trade or business, or
>>>
>>> (iii) any activity engaged in for profit and for the production of income before the day on which the active trade or business begins, in anticipation of such activity becoming an active trade or business, and
>>
>> (B) which, if paid or incurred in connection with the operation of an existing active trade or business (in the same field as the trade or business referred to in subparagraph (A)), would be allowable as a deduction for the taxable year in which paid or incurred.[6]

Petitioner's activities in 2002 with relation to ASIL Investments were, at best, start-up activities and did not amount to an active trade or business.  Accordingly, we hold that

---

[6] Sec. 195(c)(1) provides that the term "start-up expenditure" does not include expenditures for which a deduction would be allowable under sec. 163(a) (interest), 164 (taxes), or 174 (research and experimental expenses).  See TSR, Inc. & Sub. v. Commissioner, 96 T.C. 903 (1991) (explaining that the phrase "research or experimental" for purposes of sec. 174 refers to scientific or technological research); see also sec. 1.174-2(a), Income Tax Regs.  None of the expenditures listed on petitioner's Schedules C were allowable under these sections.

respondent's disallowance of petitioner's 2002 Schedule C deductions was proper.[7]

Petitioner's return for 2003 contains a Schedule C on which she reported zero gross receipts and a net loss of $32,018 for "Temps To Go".  The Schedule C for Temps To Go is the only Schedule C attached to the 2003 return.  Petitioner testified that the expenses claimed on her Schedule C for 2003 were actually expenses incurred in another business called "Gotta Get Up Productions".[8]  Petitioner claimed that she held a 100-percent interest in Gotta Get Up Productions in 2003.

In the notice of deficiency, respondent disallowed the following claimed deductions for expenses listed on petitioner's 2003 Schedule C:

---

[7] We note that many of the claimed expenses were clearly personal as opposed to business expenses.  These included: Travel expenses paid for with petitioner's Versata, Inc., credit card for a stay at the Oakland Marriott while her house was being restored after experiencing water damage caused by a leaky roof; expenses associated with a tennis club membership; expenses for the rental of other business property for a studio that her brother Jon Tomlinson leased in September 2002; travel expenses for four rooms at the Dayton Marriott for petitioner's family to attend an event featuring petitioner's brother Jon's art; and expenses for the entire cost of petitioner's health, life, disability, homeowner's, and automobile insurance.  Many other claimed expenses were unsubstantiated.

[8] Petitioner also testified that she was unsure whether any of the expenses claimed on the 2003 Schedule C relate to Temps to Go.

| Expenses | Amount |
|---|---|
| Other expenses | [1]$16,055 |
| Meals and entertainment | 2,140 |
| Travel | 460 |
| Legal and professional services | 459 |
| Car and truck expenses | 824 |
| Total | 19,938 |

[1] "Other expenditures" are enumerated on petitioner's return as follows:

| Expenses | Amount |
|---|---|
| Club memberships | $172 |
| Copyright registration | 1,890 |
| Dues and subscriptions | 320 |
| Framing | 280 |
| Membership fees | 175 |
| Parking | 848 |
| Photography | 685 |
| Postage | 1,043 |
| Professional development | 4,250 |
| Storage fees | 440 |
| Subscriptions and publications | 199 |
| Telephone | 5,753 |
| Total | 16,055 |

On brief, respondent disputes the entire $32,018 of claimed Schedule C expenses for 2003. Section 6214(a) provides that this Court shall have jurisdiction to redetermine the correct amount of the deficiency, even if the amount so redetermined is greater than the amount determined by the Commissioner in the notice of deficiency, if the Commissioner asserts a claim at or before the hearing or rehearing. Consistent with the general mandate of section 6214(a), this Court generally will exercise its jurisdiction over an increased deficiency only where the matter is properly pleaded. See Estate of Petschek v. Commissioner, 81 T.C. 260, 271-272 (1983), affd. 738 F.2d 67 (2d Cir. 1984); see also Markwardt v. Commissioner, 64 T.C. 989, 997 (1975). Because

respondent failed to plead an increase in the disallowance of petitioner's Schedule C deductions for 2003, we consider the only amount of Schedule C deductions in dispute to be $19,938.

Petitioner testified that Gotta Get Up Productions is a greeting card, stationery, and gift item business. Petitioner described Gotta Get Up Productions as a "family business" involving the prospective sale of artwork created by her brother, Jon Tomlinson.

Petitioner testified that she took over Gotta Get Up Productions in March or April of 2003 and that "in 2003 what I had to do was identify our product offerings, develop prototypes, select paper, figure out which offerings were going to be introduced and how they were going to be introduced to the general public". Petitioner added that Gotta Get Up Productions did not open its doors until 2004. Petitioner did not earn any income from Gotta Get Up Productions in 2003. When asked at trial whether the expenses she incurred in 2003 were start-up expenses, petitioner replied that they were "the cost of starting a business, yes." Gotta Get Up Productions was not incorporated during 2003 and had no paid employees in 2003. Petitioner testified that the people who assisted her received no wages because they "hadn't sold anything" and "didn't have anything" from which they could receive any money.

Petitioner failed to provide evidence indicating that Temps to Go existed as an active trade or business in 2003.  While petitioner may have intended to create a greeting card business, petitioner's evidence indicates that her activities during 2003 were related to an attempt to start a business.  Thus, for the same reasons that we upheld respondent's disallowance of petitioner's Schedule C expenses for 2002, we sustain respondent's disallowance of petitioner's 2003 Schedule C deductions as determined in the notice of deficiency.[9]

Sec. 6651(a)(1) Addition to Tax

Section 6651(a)(1) imposes an addition to tax for failure to file a timely return.  The addition equals 5 percent of the amount required to be shown on the return for each month or fraction thereof that the return is late, not to exceed 25 percent.  Sec. 6651(a)(1).

Respondent bears the burden of production with respect to the addition to tax.  Sec. 7491(c); Higbee v. Commissioner, 116 T.C. 438, 446-447 (2001).  To meet his burden of production, respondent must come forward with sufficient evidence indicating it is appropriate to impose the addition to tax.  See Higbee v. Commissioner, supra.  Once respondent meets his burden of production, petitioner bears the burden of proving he is not

_____

[9] As in 2002, many of petitioner's claimed expenses in 2003 appear to be personal in nature.  Many other claimed expenses lack the required substantiation.

liable for the addition to tax. See id. at 447. Petitioner's 2003 income tax return was due on October 15, 2004, but was not filed until January 3, 2005. We find that respondent has met his burden of production.

"A failure to file a tax return on the date prescribed leads to a mandatory penalty unless the taxpayer shows that such failure was due to reasonable cause and not due to willful neglect." McMahan v. Commissioner, 114 F.3d 366, 368 (2d Cir. 1997), affg. T.C. Memo. 1995-547. A showing of reasonable cause requires taxpayers to demonstrate they exercised "ordinary business care and prudence" but were nevertheless unable to file the return within the prescribed time. United States v. Boyle, 469 U.S. 241, 246 (1985); sec. 301.6651-1(c)(1), Proced. & Admin. Regs. Generally, factors that constitute "reasonable cause" include unavoidable postal delays, death or serious illness of the taxpayer or a member of his immediate family, or reliance on the mistaken legal opinion of a competent tax adviser, lawyer, or accountant that it was not necessary to file a return. McMahan v. Commissioner, supra at 369.

Petitioner contends that she had reasonable cause for filing late, and that the late filing of her return is because of her responsibility to care for her brother after he was released from the hospital in December 2003. Petitioner argues that it took more than 5 months to secure reliable caregivers, and that her

primary focus was overseeing her brother's caregiver needs and starting a new business venture.

We accept petitioner's testimony that she became responsible for her brother after he was released from the hospital in 2003. However, petitioner testified that she found the time to try to start a new greeting card venture and also found caregivers for her brother by May 2004, 5 months before the extended due date of the 2003 tax return and more than 7 months before it was actually filed.[10]  We conclude that petitioner failed to demonstrate that her failure to file timely a return was because of reasonable cause and not willful neglect.  See sec. 301.6651-1(c), Proced. & Admin. Regs.  Accordingly, petitioner is liable for the addition to tax under section 6651(a)(1) for 2003.

To reflect the foregoing,

Decisions will be entered under Rule 155.

---

[10] We note that respondent did not determine a sec. 6651 addition to tax with regard to petitioner's late filing of her 2002 return.