T.C. Memo. 1996-447

UNITED STATES TAX COURT

JONATHAN B. GEFTMAN, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 22392-91.                    Filed September 30, 1996.

D's will formed 3 trusts:  Trust A, Trust B, and
Trust C.  P was the sole beneficiary of Trust C. Trust
C distributed $46,936 to P during his 1985 taxable
year.  Trust C's distributable net income consisted of
taxable income and tax-exempt income.
     1.  <u>Held</u>:  P's gross income includes a portion of
the distribution based on the ratio between the taxable
items and the nontaxable items making up Trust C's
distributable net income.
     2.  <u>Held</u>, <u>further</u>, P is liable for the addition
to tax under sec. 6651(a), I.R.C.
     3.  <u>Held</u>, <u>further</u>, P is liable for the addition
to tax under sec. 6654(a), I.R.C.

Steven M. Kwartin, Martin J. Nash, Michael B. Axman, and William J. Palmer, for petitioner.

Stephen R. Doroghazi and Kenneth A. Hochman, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

LARO, Judge:  Jonathan B. Geftman petitioned the Court to redetermine respondent's determination of a $13,043 deficiency in his 1985 Federal income tax, a $3,261 addition thereto under section 6651(a), and a $754 addition thereto under section 6654(a).[1]

We must decide:

1.   Whether amounts paid to petitioner, as sole beneficiary of a trust, are includable in his 1985 gross income.  We hold that a portion of the amounts is.

2.   Whether petitioner is liable for an addition to tax under section 6651(a).  We hold that he is.

3.   Whether petitioner is liable for an addition to tax under section 6654(a).  We hold that he is.

---

[1] Respondent also determined that petitioner was liable for additions to tax under sec. 6653(a)(1) and (2), but these additions have been conceded by respondent.

Petitioner initially disputed only the additions to tax and not the deficiency in tax.  Later, in his amended petition, petitioner contested the deficiency as well as the additions to tax.

Unless otherwise indicated, section references are to the Internal Revenue Code applicable to the year in issue. Rule references are to the Tax Court Rules of Practice and Procedure. Dollar amounts are rounded to the nearest dollar.

## FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulations and the exhibits attached thereto are incorporated herein by this reference. Raymond Geftman (Decedent), petitioner's father, died on February 28, 1983. He resided in Fort Lauderdale, Florida, at the time of his death. Petitioner resided in Gladwyne, Pennsylvania, when he filed his petition. He became 16 years old during 1985.

Three testamentary trusts were established pursuant to Decedent's last will and testament (Will): Trust A, Trust B, and Trust C. Trust A was funded with 40 percent of Decedent's residuary estate. Trust B and Trust C were each funded with 30 percent of Decedent's residuary estate. The estate, trusts, and petitioner all had different taxable years: The estate had a fiscal year ending March 31, each of the trusts had a fiscal year ending February 28, and petitioner was on the calendar year. Pursuant to the Will, five individuals appointed as co-personal representatives of the estate were also appointed as cotrustees of the testamentary trusts.[2]

---

[2] In addition to those five individuals, the Will appointed

(continued...)

Petitioner is the sole beneficiary of Trust C. The Trust C instrument provides a schedule for the payment of the trust's principal based on petitioner's age.[3] However, the trustees could invade the income or principal for petitioner under the following circumstances:

> During the term of this Trust, the Trustees shall invade the current income or principal hereof for the * * * [petitioner's] health, support, maintenance and education, including, but not limited to, tuition, books, room and board, while the * * * [petitioner] is attending an institution of higher learning. The Trustees shall also invade the current income or

---

[2](...continued)
Edith Kermer, the income beneficiary of Trust B, as an additional cotrustee for Trust B only. The will also appointed petitioner as an additional cotrustee of Trust A, Trust B, and Trust C upon his reaching the age of 21.

[3] The Trust C instrument provides "twenty (20%) percent of the principal of this Trust (based upon the then current market value of the same) shall be distributed to the * * * [petitioner] upon his successful completion of any state bar examination for the admission to the practice of law." The Trust C instrument further provides that any remaining principal of Trust C shall be distributed to petitioner as follows:

> (b) One-sixth (1/6) thereof upon attaining the age of thirty (30) years.
> (c) One-fifth (1/5) of the remaining balance upon attaining the age of thirty-two (32) years of age.
> (d) One-fourth (1/4) of the remaining balance upon attaining the age of thirty-four (34) years of age.
> (e) One-third (1/3) of the remaining balance upon attaining the age of thirty-six (36) years of age.
> (f) One-half (1/2) of the remaining balance upon attaining the age of thirty-eight (38) years of age.
> (g) The entire remaining balance thereof upon attaining the age of forty (40) years of age.

principal of this Trust as reasonably needed to assist the * * * [petitioner] in starting and operating any lawful profession or business which, in the reasonable opinion of the Trustees, will be a profitable venture of the * * * [petitioner].

The Will further stated that

It is to be understood by my Personal Representatives and Trustees that the primary purpose to be considered throughout this Last Will and Testament and in connection with any ambiguities or questions which may arise under any of its terms is to provide for the benefit of my son, JONATHAN B. GEFTMAN. No action should be taken by my Personal Representative and Trustees which would unreasonably detract from my son's ability to receive the maximum income and principal to which he is entitled under the terms of this Last Will and Testament.

In August 1983, the Personal Representatives transferred approximately $3 million of tax-free municipal bonds to brokerage accounts at E.F. Hutton and Paine Webber, titled in the names of the trusts.[4] The trusts earned $252,408 of nontaxable interest on these funds during their taxable year ended February 28, 1985. From December 1983 through September 7, 1984, the trustees borrowed funds on margin from the same brokerage accounts and transferred the funds to the estate, utilizing the municipal bonds as collateral. The total borrowing on margin, as of August 31, 1984, was $2,850,408.

The trusts lent all of the funds received from this borrowing on margin to the estate or corporations owned by the

---

[4] All beneficiaries under Trust A, Trust B, and Trust C provided consents authorizing this transfer of municipal bonds. Since petitioner was a minor at the time of the transfer, his mother executed a consent on his behalf.

estate. Although there were no repayment schedules, no fixed maturity dates, and no notes with respect to the debts, the debts were mentioned in a memorandum and in the trusts' journal entries. The January 17, 1984, Memorandum of Combined Meeting of the Personal Representatives and Board of Directors of the corporations owned by the estate stated that:

> The actions necessary to pay or transfer estate assets needed for the settlement was also ratified, however there was lengthy discussion on the issue as to the ratification of the borrowing from the stockbroker by using trust assets as collateral as opposed to the sale of estate assets to pay the sums due for settlement. The action which had been taken to borrow was ratified * * *

Further, the trusts' journal indicates that mortgages were transferred to satisfy the estate's "partial debt settlement".

The interest due on the margin accounts was solely the legal obligation of the trusts. The trusts would pay the margin interest to E.F. Hutton, and the estate would pay the trusts equal amounts as interest on their loans to the estate. The E.F. Hutton statements for April through August 1984 reflect handwritten notations indicating the estate's portion of the margin interest incurred by the trusts. They also reflect deposits the subsequent months which correspond directly to the handwritten notations, as shown in the following table:

| Date | Handwritten Notations Indicating Estate Interest | Deposits to the E.F. Hutton Account |
|---|---|---|
| 4/84 | $16,086 | --- |

| 5/84 | 20,538 | $16,086 |
|------|--------|---------|
| 6/84 | 21,580 | 20,538 |
| 7/84 | 24,560 | 21,580 |
| 8/84 | --- | 24,560 |
| Total | 82,764 | 82,764 |

Any payment of interest to the trusts by the estate resulted in a wash transaction, whereby for each dollar that the trusts owed in margin interest to E.F. Hutton they received exactly $1 from the estate.

The estate transferred these funds to corporations controlled by the estate. The corporations used the funds borrowed from the trusts to develop condominiums. After the corporations developed the condominiums, the corporations sold them and held their first mortgages. The estate formed Berkley Mortgage Corp. (Berkley) as a nominee corporation to hold title in the mortgages and service the mortgage payments on these instruments. At all times, the estate owned all interests in Berkley. Berkley serviced mortgages, accepted payments for mortgages, and accounted for the money to the beneficiaries of the trusts. Berkley segregated mortgages on its books indicating ownership of particular mortgages by the estate or the trusts.

The trusts owned mortgages in La Playa and Blue Grass developments during the trusts' fiscal year ended February 28, 1985. All mortgages on condominiums in the La Playa and Blue Grass developments were taken in the name of Berkley as mortgagee. Berkley transferred mortgages on the properties to the trusts. The trusts' journal entries, for the fiscal year

ended February 28, 1985, reflect a $2,029,390 entry for the La

Playa Condominium mortgages and a $79,990 accrued mortgage

receivable for the mortgages through March 16, 1985.  The journal

indicates that these mortgages were transferred from the estate

to the trusts as a "partial debt settlement".  All transfers of

mortgages were accomplished by book entries on the records of

Berkley.

Berkley made intermittent transfers of funds to the trusts.

Berkley made the following transfers to the trusts during the

fiscal year ended February 28, 1985:

|  |  |
|---|---|
| Oct. 17, 1984 | $12,000 |
| Nov.  9, 1984 | 5,000 |
| Jan.  4, 1985 | 25,000 |
| Jan. 29, 1985 | 1,000 |
| Feb.  5, 1985 | 14,000 |
| Feb. 14, 1985 | 1,000 |
| Feb. 20, 1985 | 1,000 |
| Total | 59,000 |

Berkley's transfers of funds to the trusts were noted in the

trusts' ledger under the "Berkley Mortgage Corporation" account.

The estate had no distributable net income (DNI) in its

fiscal years ended March 31, 1984 and 1985.  For its fiscal year

ended March 31, 1985, the estate's Form 1041, U.S. Fiduciary

Income Tax Return, reported negative total income of $327,946.

Trust C reported DNI of $101,890 on its Form 1041 for its taxable

year ending February 28, 1985.

During 1985, Trust C distributed $46,936 to petitioner, and

$52,101 remained in a brokerage account in petitioner's name on

December 31, 1985. Petitioner did not file a Federal income tax return for his 1985 taxable year. Respondent determined that all $46,936 of petitioner's distribution was includable in his gross income. Respondent's determination is based on an "indirect method".[5]

OPINION

A. Income Tax on Distribution to Petitioner

The primary issues we must decide are whether and to what extent Trust C's distribution of $46,936 to petitioner during 1985 is includable in his gross income for that year. Respondent determined that the whole of the distribution was includable in gross income because Trust C had sufficient DNI for its taxable year ended February 28, 1985, as indicated on its Schedule K-1, Beneficiary's Share of Income, Deductions, Credits, etc. Respondent's determination is presumed correct, and the burden is on petitioner to disprove her determination.[6] Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933); Laird v. Commissioner, 85 F.2d 598, 599 (3d Cir. 1935), affg. 29 B.T.A. 196 (1933). Petitioner contends that Trust C's distribution to him is not includable in his 1985 gross income because Trust C

---

[5] The parties have not explained respondent's indirect method. The record indicates that respondent treated all of the checks distributed to petitioner as taxable to him.

[6] Petitioner alleges that the burden is on respondent because respondent's reliance upon the Schedule K-1 is arbitrary and erroneous. We disagree. The burden of proof is on petitioner.

did not have DNI for its taxable year ended February 28, 1985. We conclude that the trust did have DNI for that year and that a portion of the distribution is includable in petitioner's gross income based on the ratio between the taxable and nontaxable items making up the trust's DNI.  For tax purposes, trusts are in certain circumstances treated as conduits, whose distributable income is taxable to the beneficiaries.  See Hammond v. United States, 764 F.2d 88, 96 (2d Cir. 1985); Estate of Petschek v. Commissioner, 738 F.2d 67, 70 (2d Cir. 1984), affg. 81 T.C. 260 (1983); see also United Cal. Bank v. United States, 439 U.S. 180, 199 (1978); Freuler v. Helvering, 291 U.S. 35 (1934); De Brabant v. Commissioner, 34 B.T.A. 951, 955-956 (1936), affd. 90 F.2d 433 (2d Cir. 1937).

Income distributed by a trust to a beneficiary is includable in the latter's gross income as provided in subchapter J of the Internal Revenue Code.  Secs. 61(a)(15), 652(a), 662(a); see also Rogers v. Commissioner, T.C. Memo. 1980-495.  In the case of a so-called complex trust such as Trust C, the amount includable in the beneficiary's income is limited by the trust's DNI.  Sec. 662(a).  This income is includable in the taxable year of the beneficiary within which the taxable year of the trust ends.  Sec. 662(c).

The DNI of an estate or trust limits the amount on which beneficiaries can be taxed under section 662.[7]  DNI is an "artificial concept" which ensures that trust beneficiaries are not taxed on more than "the trust's actual net income." Estate of Petschek v. Commissioner, supra at 71.  The Internal Revenue Code defines DNI as the taxable income of the estate or trust modified for deductions for distributions, deductions for personal exemptions, capital gains and losses, extraordinary dividends and taxable stock dividends, tax-exempt interest, and income of foreign trusts.  Sec. 643(a).  DNI includes tax-exempt interest under section 103, reduced by any amounts "which would be deductible in respect of disbursements allocable to such interest but for the provisions of section 265 (relating to disallowance of certain deductions)."  Sec. 643(a)(5).  It is usually not calculated until the end of the taxable year.  See Estate of Petschek v. Commissioner, supra at 71.

Where the trust distributes an amount greater than its DNI, each beneficiary includes in his or her gross income only "an amount equivalent to his proportionate share of such

[7] The regulations describe the effects of DNI as follows:

It limits the deductions allowable to estates and trusts for amounts paid, credited or required to be distributed to beneficiaries and is used to determine how much of an amount paid, credited, or required to be distributed to a beneficiary will be includable in his gross income.  It is also used to determine the character of distributions to the beneficiaries. [Sec. 1.643(a)-0, Income Tax Regs.]

distributable net income."  Sec. 1.652(a)-2(b), Income Tax Regs.
If a beneficiary has gross income under subchapter J, the
character of the income to the beneficiary is the same as the
character would be in the hands of the trust.  Sec. 1.662(b)-1,
Income Tax Regs.  Under the character rule, when a trust earns
income from various sources, the income is:

> treated as consisting of the same proportion of each
> class of items entering into the computation of
> distributable net income as the total of each class
> bears to the total distributable net income of the
> estate or trust unless the terms of the governing
> instruments specifically allocate different classes of
> income to different beneficiaries * * * [Id.]

Thus, to determine whether petitioner is subject to income
tax on his receipt of the $46,936 distribution, we must first
determine whether Trust C had DNI for its taxable year ended
February 28, 1985.  If Trust C had DNI equal to or greater than
$46,936 for its taxable year ended February 28, 1985, then
petitioner must include a percentage of the $46,936 distribution
in his 1985 gross income, equal to the proportion of Trust C's
DNI that consists of taxable items.

Respondent determined that the trusts earned income from
three sources during the years in question:  (1) Interest on
municipal bonds, (2) interest on the loans from the trusts to the
estate, and (3) interest on the La Playa and Blue Grass
mortgages.  Petitioner contests respondent's determination; he
alleges that Trust C did not have sufficient DNI for the year in
issue.  Since respondent concedes that the trusts earned $252,408

of interest on municipal bonds received from the estate, we conclude that Trust C earned $75,722 of nontaxable interest income, 30 percent of the total municipal bond interest. For the reasons stated below, we find that Trust C had DNI of $75,722 from interest on municipal bonds, $24,829 from interest on the loans from the trusts to the estate, and $27,179 mortgage interest income. Since $52,008, or 41 percent of Trust C's total DNI of $127,730, consists of taxable (i.e., nonexempt) income, under the characterization rule, petitioner should include only $19,111 in his gross income, 41 percent of the $46,936 distribution.

### 1. Interest on Loans Between the Estate and the Trusts

Respondent determined that the trusts earned $82,763 in interest on loans from the trusts to the estate. Petitioner argues that the trusts did not earn interest on any loan from the trusts to the estate because the estate and the trusts did not have a valid debtor/creditor relationship.

Petitioner further argues that even if there was a valid debt, Trust C had no DNI because the estate did not have DNI for the fiscal year in issue to distribute to Trust C. We agree with respondent.

A transfer of money will be characterized as a loan for Federal income tax purposes where, "at the time the funds were transferred, [there was] an unconditional intention on the part of the transferee to repay the money, and an unconditional

intention on the part of the transferor to secure payment."
Haag v. Commissioner, 88 T.C. 604, 616 (1987), affd. 855 F.2d 855
(8th Cir. 1988); see also Haber v. Commissioner, 52 T.C. 255
(1969), affd. 422 F.2d 198 (5th Cir. 1970); Saigh v.
Commissioner, 36 T.C. 395, 419 (1961).  Often there is no direct
evidence of a taxpayer's intention.  Courts have focused on the
following objective factors to determine whether a bona fide loan
exists:  "(1) The existence or nonexistence of a debt instrument;
(2) provisions for security, interest payments and a fixed
repayment date; (3) treatment of the funds on the corporation's
books; [and] (4) whether repayments were made".  Haag v.
Commissioner, supra at 616 n.6; see United States v. Uneco, Inc.,
532 F.2d 1204, 1208 (8th Cir. 1976); In re Indian Lakes Est.
Inc., 448 F.2d 574, 578-579 (5th Cir. 1971); Haber v.
Commissioner, supra at 266; Slear v. Commissioner, T.C. Memo.
1987-395; Baird v. Commissioner, T.C. Memo. 1982-220;
Astleford v. Commissioner, T.C. Memo. 1974-184, affd. per curiam
516 F.2d 1394 (8th Cir. 1975).  This is a factual issue, to be
decided upon all the facts and circumstances in each case.  See
Estate of Chism v. Commissioner, 322 F.2d 956, 960 (9th Cir.
1963), affg. T.C. Memo. 1962-6; Electric & Neon, Inc. v.
Commissioner, 56 T.C. 1324, 1338-1339 (1971), affd. without
published opinion 496 F.2d 876 (5th Cir. 1974).  The above
factors are not exclusive, and no one factor is determinative.
See Kelley Co. v. Commissioner, 326 U.S. 521 (1946); Litton Bus.

Sys., Inc. v. Commissioner, 61 T.C. 367, 376-377 (1973); Roschuni v. Commissioner, 29 T.C. 1193, 1202 (1958), affd. 271 F.2d 267 (5th Cir. 1959); Georgiou v. Commissioner, T.C. Memo. 1995-546; Wood Preserving Corp. v. United States, 233 F. Supp. 600, 605 (D. Md. 1964), affd. 347 F.2d 117 (4th Cir. 1965). The factors are simply objective criteria helpful to the court in analyzing all of the relevant facts and circumstances. Petitioners bear the burden of proving that a bona fide debt was created. Rule 142(a); Welch v. Helvering, 290 U.S. 111 (1933).

We will examine the four criteria in turn.

a. Existence of a Debt Instrument

A debt instrument is defined as a "written, unconditional promise to pay on demand or on a specified date a sum certain at a fixed rate of interest". United States v. Uneco, Inc., supra at 1210. The parties have stipulated that there are no promissory notes reflecting any debt due from the estate to the trusts. A valid loan may exist even where there is no formal debt instrument. Joseph Lupowitz Sons, Inc. v. Commissioner, 497 F.2d 862, 867-868 (3d Cir. 1974), affg. T.C. Memo. 1972-238; Gilbert v. Commissioner, 74 T.C. 60, 66 (1980); American Processing & Sales Co. v. United States, 78 Ct. Cl. 353, 371 F.2d 842 (1967). Formal documentation is not controlling. Litton Bus. Sys., Inc. v. Commissioner, supra at 376-377. This is especially true in the case of related parties. American

Processing & Sales Co. v. United States, supra; Litton Bus. Sys., Inc. v. Commissioner, supra at 377.

Although we do not find that the parties created a formal "debt instrument", we do find that the parties have evidenced an objective expression of their intent to create a debt. See Litton Bus. Sys., Inc. v. Commissioner, supra at 377. The absence of formal notes does not preclude the court from treating other written documentation as evidence of a bona fide debt. Baird v. Commissioner, supra at 395; see Fin Hay Realty Co. v. United States, 398 F.2d 694, 697 (3d Cir. 1968). In Litton Bus. Sys., Inc. v. Commissioner, supra, the Court found that a board of directors' resolution directing that an advance account be established as a debt obligation was sufficient to indicate indebtedness between related parties. The memorandum contained statements reflecting "borrowing from the stockbroker" by "using trust assets as collateral" and was followed by a transfer of the borrowed funds from the trusts to the estate. The journal entries indicate the transfers of mortgages from the estate to the trusts in "partial debt settlement". We find that these writings show the presence of a valid debt and may be considered jointly to be objective evidence of indebtedness.

b. Security, Interest Payments, or Fixed Repayment Date

The parties have stipulated that there was no repayment schedule and no fixed maturity date with respect to the debt.

Nor is there evidence of any security for the debt or of any provision for interest on the debt.

However, the lack of these debt characteristics is not determinative. Lack of formality may not necessarily negate the presence of a loan when related parties transfer funds. See Donisi v. Commissioner, T.C. Memo. 1967-62, affd. 405 F.2d 481 (6th Cir. 1968). Even if interest is not paid on a debt, a bona fide debt may exist. Joseph Lupowitz Sons, Inc. v. Commissioner, supra at 868; Gilbert v. Commissioner, supra; Shaken v. Commissioner, 21 T.C. 785, 793 (1954).

c. Treatment on the Trusts' Books

The trusts did not treat the $82,763 as interest payments on their books. This lack of treatment on the trusts' books is not conclusive. When "the same persons occupy both sides of the bargaining table, form does not necessarily correspond to the intrinsic economic nature of the transaction, for the parties may mold it at their will with no countervailing pull." Fin Hay Realty Co. v. United States, supra at 697.

d. Repayments on the Loans

The estate made $82,763 of payments of interest on the loans, by paying a portion of the margin interest charged on the trusts' loan from E.F. Hutton. The handwritten notations on the E.F. Hutton statements for April through August 1984 indicate that the estate owed interest of a specified amount. The notations correspond directly to the deposits made by the trusts

to the account of E.F. Hutton. The similarity between notations and deposits verifies that the estate paid to the trusts interest on loans from the trusts to the estate. The trusts did not earn interest income on the municipal bonds or mortgages sufficient to make the $82,764 of payments to E.F. Hutton during 1984. Thus, the deposits made to E.F. Hutton could not have been made unless the estate had transferred funds to the trusts. Petitioner has not offered any contrary explanation to meet his burden. Accordingly, we find that the estate transferred $82,764 in interest to the trusts.

Since we find that there were bona fide debts between the estate and trusts and that the estate paid $82,764 in interest on these debts, Trust C had interest income for its fiscal year ended February 28, 1985, in the amount of $24,829, 30 percent of $82,764. Notwithstanding the fact that the estate lacks DNI for the subject taxable year, Trust C must include this amount in its DNI for its 1985 taxable year since the estate paid interest to Trust C in the latter's capacity as a creditor rather than beneficiary of the estate. See Kitch v. Commissioner, 104 T.C. 1 (1995).

### 2. Interest on Mortgages

Income derived from property is generally included in the gross income of the owner of the property. Helvering v. Horst, 311 U.S. 112 (1940); Blair v. Commissioner, 300 U.S. 5 (1937). The owner of property is the one who will reap the benefits of

ownership and bear the risks of ownership during the period at issue. <u>Alstores Realty Corp. v. Commissioner</u>, 46 T.C. 363 (1966). Taxation is more concerned with a taxpayer's actual control over the property than with title over the property. <u>Frank Lyon Co. v. United States</u>, 435 U.S. 561, 572 (1978); <u>Corliss v. Bowers</u>, 281 U.S. 376, 378 (1930); <u>Towlinsky v. Commissioner</u>, 86 T.C. 1009, 1041 (1986).

Respondent determined that the trusts earned $90,596 from mortgages which were serviced by Berkley. Petitioner argues that the trusts did not earn income from the mortgages because the mortgages were titled in the name of Berkley. We agree with respondent.

We hold that the trusts owned the mortgages at issue because Berkley transferred the mortgages to the trusts as part of a "partial debts settlement" of the debts owed by the estate to the trusts. Berkley serviced the mortgages on the condominium developments. All mortgage payments from the La Playa and Blue Grass developments were made to Berkley. Each month, Berkley would collect all mortgage payments from the mortgagors. Then, Berkley would prepare a schedule showing the mortgage number, the total payment, and the principal and interest for each mortgage.

The trusts clearly owned the La Playa and Blue Grass mortgages during the fiscal year ended February 28, 1985. On its books, Berkley indicated that the trusts owned the La Playa and Blue Grass developments. A Berkley work paper reflects a journal

entry under the heading "Trust A B & C (February Close)" indicating $89,119 interest on La Playa and $1,477 interest on Blue Grass, for a total of $90,596 during the fiscal year ended February 28, 1985. Additionally, there is a journal entry in the trusts' books which indicate the trusts acquired ownership of the mortgages as part of the estate's "partial debt settlement". Since we conclude that the trusts were the true owners of the mortgages, Trust C had mortgage interest for the taxable year ended February 28, 1985, of $27,179, 30 percent of $90,596. This amount is includable in Trust C's DNI for its taxable year ended February 28, 1985.

B.  Addition to Tax Under Section 6651(a)

Respondent determined an addition to tax under section 6651(a) for petitioner's 1985 taxable year. In order to avoid this addition to tax, petitioner must prove that his failure to file was:  (1) Due to reasonable cause and (2) not due to willful neglect. Sec. 6651(a); Rule 142(a); In re Stanford, 979 F.2d 1511, 1512 (11th Cir. 1992); Buelow v. Commissioner, 970 F.2d 412, 415 (7th Cir. 1992), affg. T.C. Memo. 1990-219; In re American Biomaterials Corp., 954 F.2d 919, 922 (3d Cir. 1992); Stovall v. Commissioner, 762 F.2d 891, 895 (11th Cir. 1985), affg. T.C. Memo. 1983-450;  United States v. Boyle, 469 U.S. 241, 245 (1985); Fleming v. United States, 648 F.2d 1122, 1124 (7th Cir. 1981).  A failure to file a timely Federal income tax return is due to reasonable cause if the taxpayer exercised ordinary

business care and prudence, and, nevertheless, was unable to file the return within the prescribed time. In re Stanford, supra at 1514; Fleming v. United States, supra at 1124; sec. 301.6651-1(c)(1), Proced. & Admin. Regs. Willful neglect means a conscious, intentional failure to file or reckless indifference. United States v. Boyle, supra at 245.

Petitioner argues that his failure to file was due to reasonable cause because he was a minor during the year in issue and was not responsible for his financial affairs. We do not find petitioner's argument persuasive. His "youth and ignorance at the time returns should have been filed" does not constitute reasonable cause in the circumstances. Bassett v. Commissioner, 67 F.3d 29, 30 (2d Cir. 1995), affg. 100 T.C. 650 (1993). Petitioner introduced no evidence that his failure to file was due to reasonable cause and not due to willful neglect. Petitioner received Schedule K-1 from Trust C informing him that his portion of Trust C's interest during 1984 was $47,113. We sustain respondent's determination under section 6651(a) for petitioner's 1985 taxable year.

## C. Addition to Tax Under Section 6654

Respondent further determined an addition to tax under section 6654 for the year in issue, asserting that petitioner failed to pay estimated tax. This addition to tax is mandatory unless petitioner proves that he comes within one of the exceptions provided in section 6654. In re Stanford, supra at

1514; <u>Recklitis v. Commissioner</u>, 91 T.C. 874, 913 (1988). Petitioner has failed to show that any of the statutory exceptions apply.  Accordingly, we sustain respondent's determination under section 6654 for petitioner's 1985 taxable year.

We have considered all arguments made by petitioner for a contrary holding and, to the extent not discussed above, find them to be without merit.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>under Rule 155</u>.